UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                        :
UNITED STATES OF AMERICA                                :
                                                        :
                    -v-                                 :          20-CR-84 (AJN)
                                                        :
Ralph Berry,                                            :          ORDER
                                                        :
                              Defendant.                :
                                                        :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/25/21

ALISON J. NATHAN, United States District Judge:

The charging conference for this matter was held on September 24, 2021. *See* Dkt. No. 129. The Court is also in receipt of the parties' jointly proposed edit to Instruction No. 12. *See* Dkt. No. 130. The Court adopts the parties' proposed edit. Accordingly, attached to this Order are redline and clean copies of the draft jury charge.

No later than tomorrow, September 26, 2021, at 12:00 p.m., the parties may inform the Court in writing of any errors that were the result of the Court's inputting the changes from the September 24 charging conference or today's letter.

In light of the resolution of the edit to Instruction No. 12, the Court will meet with the parties on Monday, September 27 at 9:00 a.m.

SO ORDERED.

Dated: September 25, 2021
       New York, New York
                                        _____
                                                  ALISON J. NATHAN
                                              United States District Judge

DRAFT SENT TO COUNSEL (clean) – September 25, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-                                                           20-cr-84 (AJN)

RALPH BERRY,

                              Defendant.

**[DRAFT] JURY INSTRUCTIONS**

**TABLE OF CONTENTS**

1   INTRODUCTORY INSTRUCTIONS ................................................................. 4
2       Instruction No. 1: Role of the Court .................................................................. 4
3       Instruction No. 2: Role of the Jury ................................................................... 5
4       Instruction No. 3: Contact with Others/Social Media ......................................... 6
5       Instruction No. 4: Statements of Counsel and Court Not Evidence;  Jury's Recollection
6           Controls ........................................................................................................... 7
7       Instruction No. 5: Improper Considerations ...................................................... 9
8       Instruction No. 6: All Parties Are Equal Before the Law ................................... 10
9       Instruction No. 7: Implicit Bias ...................................................................... 11
10      Instruction No. 8: Presumption of Innocence and Burden of Proof ..................... 12
11      Instruction No. 9: Reasonable Doubt ............................................................... 13
12      Instruction No. 10: The Indictment ................................................................. 14
13  CHARGE ............................................................................................................ 15
14      Instruction No. 11: Summary of the Indictment ................................................ 15
15      Instruction No. 12: Aiding and Abetting Liability ............................................. 16
16      Instruction No. 13: Predicate Narcotics Conspiracy .......................................... 19
17      Instruction No. 14: Predicate Narcotics Conspiracy – First Element: Existence of the
18          Conspiracy ..................................................................................................... 21
19      Instruction No. 15: Predicate Narcotics Conspiracy – Second Element: Membership in the
20          Conspiracy ..................................................................................................... 25
21      Instruction No. 16: Count One (Murder Using a Firearm) ................................... 27
22      Instruction No. 17: Count One (Murder Using a Firearm) – First Element: Use, Carry or
23          Possess ........................................................................................................... 29
24      Instruction No. 18: Count One (Murder Using a Firearm) – Second Element: During and in
25          Relation to a Drug Trafficking Crime ............................................................... 30
26      Instruction No. 19: Count One (Murder Using a Firearm) – Third Element: Causing Death ... 31
27      Instruction No. 20: Count One (Murder Using a Firearm) – Fourth Element: Death Qualifies as
28          Federal Murder ................................................................................................ 32
29      Instruction No. 21: Count One (Murder Using a Firearm) – Fifth Element: Knowingly ......... 34
30      Instruction No. 22: Count Two (Killing While Engaged in Narcotics Conspiracy) ................ 35
31      Instruction No. 23: Count Two (Killing While Engaged in Narcotics Conspiracy) – First and
32          Second Elements: Narcotics Conspiracy and Drug Weight ............................ 36
33      Instruction No. 24: Count Two (Killing While Engaged in Narcotics Conspiracy) – Third and
34          Fourth Elements: Counsel, Command, Induce, Procure, or Cause an Intentional Killing 37
35      Instruction No. 25: Count Three (Murder in Aid of Racketeering) ........................................ 39
36      Instruction No. 26: Count Three (Murder in Aid of Racketeering) – First Element: Existence of
37          an Enterprise .................................................................................................. 40
38      Instruction No. 27: Count Three (Murder in Aid of Racketeering) – Second Element:
39          Racketeering Activity ...................................................................................... 42

Instruction No. 28: Count Three (Murder in Aid of Racketeering) – Third Element: Interstate Commerce ................................................................................ 45

Instruction No. 29: Count Three (Murder in Aid of Racketeering) – Fourth Element: Murder in Violation of New York Law ................................................................ 46

Instruction No. 30: Count Three (Murder in Aid of Racketeering) – Fifth Element: Purpose of Maintaining or Increasing Position in Enterprise ................................. 47

OTHER INSTRUCTIONS ................................................................................ 48

Instruction No. 31: Venue ........................................................................... 48

GENERAL INSTRUCTIONS ............................................................................ 49

Instruction No. 32: Direct and Circumstantial Evidence ...................................... 49

Instruction No. 33: Inferences ...................................................................... 51

Instruction No. 34: Number of Witnesses and Uncontradicted Testimony (If Applicable) ...... 53

Instruction No. 35: Credibility of Witnesses ..................................................... 54

Instruction No. 36: Credibility of Witnesses: Impeachment by Prior Inconsistent Statement .. 56

Instruction No. 37: Law Enforcement Witness ................................................... 57

Instruction No. 38: Expert Witnesses ............................................................. 58

Instruction No. 39: Accomplice/Cooperating Witness Testimony ............................ 59

Instruction No. 40: Testimony of Felons .......................................................... 62

Instruction No. 41: Stipulations .................................................................... 63

Instruction No. 42: Preparation of Witnesses .................................................... 64

Instruction No. 43: Persons Not on Trial ......................................................... 65

Instruction No. 44: Uncalled Witnesses .......................................................... 66

Instruction No. 45: Defendant's Testimony (if Defendant Testifies) ......................... 67

Instruction No. 46: Defendant's Right Not to Testify (if Defendant Does Not Testify) .......... 68

Instruction No. 47: Redaction of Evidentiary Items ............................................ 69

Instruction No. 48: Punishment ................................................................... 70

Instruction No. 49: Right to Hear Testimony; Election of Foreperson; Communications with the Court; Juror Note-Taking ................................................................. 71

CONCLUDING REMARKS ............................................................................. 73

# INTRODUCTORY INSTRUCTIONS

## Instruction No. 1: Role of the Court

You have now heard all of the evidence in the case.  It is my duty at this point to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you.  Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.  If an attorney or anyone else at trial has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  You may take a copy of these instructions with you into the jury room.

<u>Instruction No. 2: Role of the Jury</u>

Your role is to decide the fact issues that are in the case.  You are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence or lack of evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw solely based on the evidence and from the facts as you have determined them.  You must determine the facts based solely on the evidence received in this trial.

In determining the facts, you must rely upon your own recollections of the evidence. What the lawyers have said—for instance, in opening statements, in closing arguments, in objections, or in questions—is not evidence.  You should bear in mind particularly that questions put to witnesses, although they can provide the context to answers, are not themselves evidence. It is only the answers that are evidence.

I remind you also that nothing I have said during the trial or will say during these instructions is evidence.  Similarly, the rulings I have made during the trial are not any indication of my views of what your decision should be.

The evidence before you consists of the answers given by witnesses, the exhibits, and the stipulations that were received in evidence.  If I have sustained an objection to a question or told you to disregard testimony, the answers given by a witness are no longer part of the evidence in this case and may not be considered by you.

1                       <u>Instruction No. 3: Contact with Others/Social Media</u>

2         During your deliberations, you must not communicate with or provide any information to

3 anyone by any means about this case.  You may not use any electronic devices or media, such as

4 a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the Internet, or any

5 internet service, or any text or instant messaging service; or any internet chat room, blog, or

6 website, such as Facebook, My Space, LinkedIn, YouTube, Twitter, Instagram, or Snapchat, to

7 communicate to anyone any information about this case or to conduct any research about this

8 case until I accept your verdict.  In other words, you cannot talk to anyone on the phone or in

9 person, correspond with anyone, or electronically communicate with anyone about this case.

10 You can only discuss the case in the jury room with your fellow jurors during deliberations.

11         Along the same lines, you should not try to access any information about the case or do

12 research on any issue that arose during the trial from any outside source, including dictionaries,

13 reference books, or anything on the Internet.  In our judicial system, it is important that you are

14 not influenced by anything or anyone outside of this courtroom.  Your sworn duty is to decide

15 this case solely and wholly on the evidence that was presented to you in this courtroom.

1          Instruction No. 4: Statements of Counsel and Court Not Evidence;
2                          Jury's Recollection Controls

3          As I have said, you must determine the facts by relying upon your own recollection of the

4    evidence.  This case is not to be decided on the rhetoric of either the attorneys for the

5    Government or the attorneys for the Defendant.  The lawyers' arguments are intended to

6    convince you to draw certain conclusions from the evidence or lack of evidence.  Those

7    arguments are important.  You should weigh and evaluate them carefully.  But you must not

8    confuse them with the evidence.  If your recollection of the evidence differs from the statements

9    of the lawyers, follow your recollection.

10         You should draw no inference or conclusion for or against any party by reason of lawyers

11   making objections or my rulings on such objections.  Counsel have not only the right but the

12   duty to make legal objections that they think are appropriate.  You should not be swayed against

13   the Government or the Defendant simply because counsel for either side has chosen to make an

14   objection.  Similarly, statements made by counsel when arguing the admissibility of evidence are

15   not to be considered as evidence.

16         If I comment on the evidence during my instructions, do not accept my statements in

17   place of your recollection.  Again, it is your recollection that governs.

18         Do not concern yourself with what was said at side bar conferences or during my

19   discussions with counsel.  Those discussions related to rulings of law, which are my duty, and

20   not to matters of fact, which are your duty to determine.

7

1          At times I may have admonished a witness or directed a witness to be responsive to

2   questions, to keep his or her voice up, or to repeat an answer.  I have also instructed the lawyers

3   at times to keep their voices up and speak into the microphones.  My instructions were intended

4   only to clarify the presentation of evidence.  You should draw no inference or conclusion of any

5   kind, favorable or unfavorable, with respect to any witness or party in the case, by reason of any

6   comment, question, or instruction of mine.  Nor should you infer that I have any views as to the

7   credibility of any witness, as to the weight of the evidence, or as to how you should decide any

8   issue that is before you.  That is entirely your role.

1            Instruction No. 5: Improper Considerations

2            Your verdict must be based solely upon the evidence developed at trial or the lack of

3    evidence.  It would be improper for you to consider any personal feelings you have about Mr.

4    Berry's race, ethnicity, religion, national origin, sex, age, or other similar factor.  Similarly, it

5    would be improper for you to consider any personal feelings you may have about the race,

6    ethnicity, religion, national origin, sex, age, or any other similar factor of any other witness or

7    anyone else involved in this case.  It would be equally improper for you to allow any feelings

8    you might have about the nature of the crime charged to interfere with your decision-making

9    process.  Mr. Berry is entitled to a trial free from prejudice and our judicial system cannot work

10   unless you reach your verdict through a fair and impartial consideration of the evidence.

1          <u>Instruction No. 6: All Parties Are Equal Before the Law</u>

2          You are to perform the duty of finding the facts without bias or prejudice as to any party.

3    You are to perform your final duty in an attitude of complete fairness and impartiality.

4          The fact that the prosecution is brought in the name of the United States of America

5    entitles the Government to no greater consideration than that given to any other party to this

6    litigation.  By the same token, the Government is entitled to no less consideration.  All parties,

7    whether Government or individuals, stand as equals at the bar of justice.

10

1                        <u>Instruction No. 7: Implicit Bias</u>

2          It is important that you discharge your duties without discrimination, meaning that you

3    should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual

4    orientation, gender identity, gender, or economic circumstances as you exercise your judgment

5    throughout the trial.  Also, do not allow yourself to be influenced by personal likes or dislikes,

6    sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious

7    biases are stereotypes, attitudes, or preferences that people may consciously reject but may be

8    expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious

9    bias can affect how we evaluate information and make decisions.

1          <u>Instruction No. 8: Presumption of Innocence and Burden of Proof</u>

2          Mr. Berry pleaded not guilty to the charges against him.  As a result of a plea of not

3   guilty, the burden is on the Government to prove Mr. Berry's guilt beyond a reasonable doubt as

4   to each charge.  This burden never shifts to Mr. Berry for the simple reason that the law never

5   imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any

6   witness, or locating or producing any evidence.

7          Even if Mr. Berry has presented evidence in his defense, it is not his burden to prove

8   himself innocent.  It is always the Government's burden to prove each of the elements of the

9   crimes charged beyond a reasonable doubt.

10          Furthermore, the law presumes Mr. Berry to be innocent of the charges against him.  In

11   other words, Mr. Berry starts with a clean slate.  The presumption of innocence stays with Mr.

12   Berry all throughout the trial and remains as you go into the jury room to begin your

13   deliberations.  The presumption remains unless and until you are convinced that the Government

14   has proven Mr. Berry's guilt beyond a reasonable doubt as to each charge.  Indeed, the

15   presumption of innocence alone requires you to acquit the Defendant of a charge unless you are

16   unanimously convinced that the Government has proven that he is guilty of that charge beyond a

17   reasonable doubt.

1       <u>Instruction No. 9: Reasonable Doubt</u>

2       I have said that in order to convict Mr. Berry on any of the charges in the Indictment, the

3       Government is required to prove that charge beyond a reasonable doubt. The question that

4       naturally arises is, "What is a reasonable doubt?" The words almost define themselves. It is a

5       doubt based in reason and arising out of the evidence in the case, or the lack of evidence. It is a

6       doubt that a reasonable person has after carefully weighing all of the evidence in the case.

7       Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience,

8       and your common sense. If, after a fair and impartial consideration of all the evidence, you can

9       candidly and honestly say that you do have an abiding belief of Mr. Berry's guilt as to any crime

10       charged in this case, such a belief as a prudent person would be willing to act upon in important

11       matters in the personal affairs of his or her own life, then you have no reasonable doubt, and

12       under such circumstances it is your duty to convict Mr. Berry of the particular crime in question.

13       On the other hand, if, after a fair and impartial consideration of all the evidence, you can

14       candidly and honestly say that you are not satisfied with the guilt of Mr. Berry as to any charge,

15       that you do not have an abiding belief of his guilt as to that charge—in other words, if you have

16       such a doubt as would reasonably cause a prudent person to hesitate in acting in matters of

17       importance in his or her own affairs—then you have a reasonable doubt, and in that circumstance

18       it is your duty to acquit Mr. Berry of that charge.

<u>Instruction No. 10: The Indictment</u>

1

2       The Defendant, Mr. Berry, has been formally charged in what is called an "Indictment."

3  As I instructed you at the outset of this trial, the Indictment is simply a charge or accusation.  It is

4  not evidence.  Mr. Berry begins trial with an absolutely clean slate and without any evidence

5  against him.  You must give no weight to the fact that an Indictment has been returned against

6  Mr. Berry.  What matters is the evidence that has been presented at the trial or the lack of

7  evidence.

8       I will not read the entire Indictment to you at this time.  Rather, I will summarize the

9  charges in the Indictment and then explain in detail the elements of each offense.

14

**CHARGE**

<u>Instruction No. 11: Summary of the Indictment</u>

As I just instructed you, the Indictment is just a charge or accusation.  It is not evidence.

The Indictment contains three counts, or charges, each relating to the same alleged incident on or about June 21, 2000.

Count One charges that the Defendant willfully and knowingly used and carried a gun during or in relation to a drug trafficking crime, or aided and abetted another person to do the same, resulting in the murder of Caprice Jones.

Count Two charges that, while engaged in a conspiracy to distribute 280 grams or more of crack cocaine, the Defendant caused another person to shoot and kill Caprice Jones, or aided and abetted another person to do the same.

Count Three charges that Defendant intentionally and knowingly caused the murder of Caprice Jones, or aided and abetted another person to do the same, for the purpose of maintaining or increasing his position in a racketeering enterprise.

Each count constitutes a separate offense or crime.  You must consider each count of the Indictment separately, and you must return a separate, unanimous verdict as to each count.  You may only find the Defendant guilty of a particular count if the Government has proven each element of the offense charged with respect to that count beyond a reasonable doubt.

1        <u>Instruction No. 12: Aiding and Abetting Liability</u>

2        Before I move on to the counts of the Indictment, I want to instruct you on the concept of

3    aiding and abetting, including willfully causing.  The Defendant is charged with committing

4    certain criminal acts but is also charged with aiding and abetting or willfully causing the

5    commission of those acts by another person.  As to each of those crimes, the Defendant can be

6    convicted either if he committed the crime himself or if he aided and abetted or willfully caused

7    the commission of the crime by one or more people.  It is not necessary for the Government to

8    show that the Defendant himself physically committed a crime in order for you to find him guilty.

9    You may, under certain circumstances, find him guilty of the crime as an aider and abettor or as

10    someone who willfully caused someone else to commit the crime.

11        Aiding and abetting liability is its own theory of criminal liability.  In effect, it is a theory

12    of liability that permits a person to be convicted of a specified crime if the person, while not himself

13    committing the crime, assisted another person or persons in committing the crime or willfully

14    caused another person to commit the crime.

15        Under the federal aiding and abetting statute and its New York State analogue, whoever

16    "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable

17    as a principal.  You should give these words their ordinary meaning.  A person aids or abets a

18    crime if he knowingly does some act for the purpose of aiding or encouraging the commission of

19    that crime, with the intention of causing the crime charged to be committed.  To "counsel" means

20    to give advice or recommend.  To "induce" means to lead or move by persuasion or influence as

16

1    to some action or state of mind.  To "procure" means to bring about by unscrupulous or indirect

2    means.  To "cause" means to bring something about, to effect something.

3         A person who aids and abets another to commit an offense is just as guilty of that offense

4    as if he had committed it himself.  Therefore, if you find that the Government has proven beyond

5    a reasonable doubt that another person actually committed a crime, and that the Defendant aided

6    and abetted that person in the commission of the offense, then you may find the Defendant guilty

7    of that crime.

8         As you can see, the first requirement is that the crime charged was actually committed by

9    someone.  Obviously, no one can be convicted of aiding and abetting a crime if no crime was

10   committed.  But if you do find that a crime was committed, then you must consider whether the

11   Defendant aided or abetted the commission of the crime.

12        In order to aid and abet another to commit a crime, it is necessary that the Defendant

13   willfully and knowingly associated himself in some way with the crime and that he willfully and

14   knowingly sought by some act to help make the crime succeed.

15        The mere presence of a person where a crime is being committed, even coupled with

16   knowledge by that person that a crime is being committed, or the mere acquiescence by a person

17   in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding

18   and abetting.  An aider and abettor must have some interest in the criminal venture and must take

19   some action to assist or encourage the commission of the crime.

20        To determine whether the Defendant aided and abetted the commission of the crime with

21   which he is charged, ask yourself these questions:

17

1          1.  Did he participate in the crime charged as something he wished to bring about?

2          2.  Did he associate himself with the criminal venture knowingly and willfully?

3          3.  Did he seek by his actions to make the criminal venture succeed?

4       If, but only if, the Government proves beyond a reasonable doubt that the answer to these

5  three questions is "yes," then the Defendant is an aider and abettor, and therefore guilty of the

6  charged offense.

7       Similarly, a defendant can be found guilty even if he did not himself commit the crime, if

8  he willfully caused another person to commit the crime.  What does the term "willfully caused"

9  mean?  It means that it is not necessary for the Defendant himself to have physically committed

10  the crime.  To determine whether the Defendant "willfully caused" the commission of a crime, ask

11  yourself these questions:

12          1.  First, did the Defendant intentionally take action that caused someone else to

13               commit an act that would have been a crime if the Defendant himself had

14               committed that act?

15          2.  Second, did the Defendant intend that the crime would actually be committed by

16               someone else?

17  If the answer to both of these questions is "yes," then the Defendant is guilty just as if the

18  Defendant himself had physically committed the crime.

18

1    <u>Instruction No. 13: Predicate Narcotics Conspiracy</u>

2    As I will instruct you in a moment, Counts One and Two of the Indictment both involve

3    elements that the Defendant engaged in certain conduct in the course of, or in furtherance of, a

4    conspiracy to distribute and possess with intent to distribute crack cocaine. Count Three similarly

5    has an element that involves the question of whether the Defendant was engaged in a narcotics

6    conspiracy.  Therefore, before I provide you with the specific legal instructions regarding the

7    elements of Counts One, Two, and Three, I am going to first instruct you regarding the elements

8    of a narcotics conspiracy, because they will be relevant to each of the three Counts.

9    A conspiracy is a kind of criminal partnership: a combination or agreement of two or more

10   persons to join together to accomplish some unlawful purpose.  Federal law makes it a separate

11   and independent crime for an individual to conspire with others to violate the narcotics laws of the

12   United States.  The essence of the crime of conspiracy is an agreement or understanding to violate

13   other laws.  It is separate and distinct from the crime that is the objective of the conspiracy, and it

14   is separate and distinct from the actual violation of any specific federal laws, which the law refers

15   to as substantive crimes.

16   Thus, in considering a conspiracy charge, you do not have to find that the actual substantive

17   crime that is the object of the conspiracy was committed—here, an actual distribution or possession

18   with intent to distribute crack cocaine.  In other words, you may find the Defendant guilty of

19   agreeing to distribute or agreeing to possess with intent to distribute narcotics even if the

20   conspiracy was not successful and no narcotics were actually possessed or distributed.  It is the

1    agreement itself—the agreement with others to commit the crime—along with the other elements

2    of conspiracy that the law forbids and defines as a crime.

3          To sustain its burden of proof with respect to proving a narcotics conspiracy, the

4    Government must prove beyond a reasonable doubt the following two elements:

5          First, that a conspiracy existed, that is, an agreement or understanding between two or more

6    persons existed, in or about 2000, to knowingly and intentionally distribute, or possess with intent

7    to distribute, a controlled substance, here, crack cocaine.  Therefore, the first question for you is:

8    Was there such an agreement?

9          Second, the Government must prove beyond a reasonable doubt that the Defendant

10   intentionally and knowingly became a member of that conspiracy; that is, that he knowingly

11   associated himself with the conspiracy, and participated in the conspiracy to distribute or possess

12   with the intent to distribute crack cocaine.

13

1    Instruction No. 14: Predicate Narcotics Conspiracy – First Element: Existence of the Conspiracy

2          What is a conspiracy?  A conspiracy is an agreement or an understanding, between two or

3  more persons, to accomplish a criminal or unlawful purpose.  The conspiracy alleged here is an

4  agreement to distribute crack cocaine or to possess crack cocaine with the intent to distribute it.

5          Now, to show a conspiracy, the Government is not required to show that two or more

6  people sat around a table and entered into a solemn pact, orally or in writing, stating that they had

7  formed a conspiracy to violate the law and setting forth details of the plans and means by which

8  the unlawful project is to be carried out or the part to be played by each conspirator.  Common

9  sense will tell you that when people enter into a criminal conspiracy, much may be left to the

10  unexpressed understanding.  It is rare that a conspiracy can be proven by direct evidence of an

11  explicit agreement.  The agreement may be implicit.  It is sufficient if two or more persons in some

12  way or manner, impliedly or tacitly, come to a common understanding to violate the law.

13          In order for the Government to satisfy this element, you need not find that the alleged

14  members of the conspiracy met together and entered into any express or formal agreement.

15  Similarly, you need not find that the alleged conspirators stated, in words or in writing, what the

16  scheme was, its object or purpose, every precise detail of the scheme, or the means by which its

17  object or purpose was to be accomplished.  What the Government must prove is that there was a

18  mutual understanding, either spoken or unspoken, between two or more people to cooperate with

19  each other to accomplish an unlawful act.

20          In determining whether there has been an unlawful agreement as alleged here, you may

21  consider the actions of all the alleged co-conspirators that were taken to carry out the apparent

21

1    criminal purpose, if any.  The old adage, "actions speak louder than words," applies here.  Often,

2    the only evidence that is available with respect to the existence of a conspiracy is that of

3    disconnected acts on the part of the alleged individual co-conspirators.  When taken all together

4    and considered as a whole, however, that conduct may warrant the inference that a conspiracy

5    existed just as conclusively as more direct proof, such as evidence of an express agreement.

6           In considering whether or not the Government has proven beyond a reasonable doubt that

7    the conspiracy existed, you should consider all the evidence that has been admitted with respect to

8    the conduct and statements of each alleged co-conspirator, and any inferences that may reasonably

9    be drawn from that conduct and those statements.  It is sufficient to establish the existence of the

10   conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances,

11   you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in

12   an understanding way, to accomplish the objective of the conspiracy charged in the Indictment.

13                                        <u>Object of Conspiracy</u>

14          The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.

15   The object of the conspiracy alleged here is to distribute or possess with intent to distribute crack

16   cocaine.

17          Let me note that the Government need prove only that the Defendant conspired to distribute

18   a controlled substance or that he conspired to possess the controlled substance with the intent to

19   distribute it.  The Government need not prove both.  You must be unanimous, however, as to which

20   act was proven beyond a reasonable doubt to have been the object of the conspiracy.

1                              "Distribution"

2          The word "distribution" means the actual, constructive or attempted transfer of the drug.

3  To distribute simply means to deliver, to pass over, to hand over something to another person, or

4  to cause it to be delivered, passed on or handed over to another.  Distribution does not require a

5  sale, but includes sales.

6                    "Possession With Intent To Distribute"

7          What does "possession with intent to distribute" mean?  I will first discuss the concept of

8  "possession," and then discuss the concept of "intent to distribute."

9                                *Possession*

10         The legal concept of possession may differ from the everyday usage of the term, so let me

11 explain it in some detail.  Actual possession is what most of us think of as possession—that is,

12 having physical custody or control of an object, as I possess this pen.  However, a person need not

13 have actual, physical possession—that is, physical custody of an object—in order to be in legal

14 possession of it.  If a person has the ability to exercise substantial control over an object, even if

15 he or she does not have the object in his physical custody, and that person has the intent to exercise

16 such control, then the person is in possession of that object.  This is called "constructive

17 possession."

18         Control over an object may be demonstrated by the existence of a working relationship

19 between one person having the power or ability to control the item and another person who has

20 actual physical custody.  The person having control "possesses" the narcotics, because he or she

1    has an effective working relationship with the person who has actual physical custody of the

2    narcotics, and because he or she can direct the movement or transfer or disposition of the narcotics.

3          More than one person can have control over the same narcotics.  The law recognizes that

4    possession may be sole or joint.

5          Finally, possession and ownership are not the same.  A person can possess an object and

6    not be the owner of the object.

7                                    *Intent to Distribute*

8          Possession "with intent to distribute" simply means the possession of a controlled

9    substance with the intent or purpose to "distribute" it to another person or persons, as I have already

10   defined that term.

11         Since no one can read a defendant's mind, the determination as to a defendant's intent is

12   inferred from his behavior.  Basically, the question with regard to the intent aspect of the

13   underlying offense is whether any drugs in a defendant's possession, that is, subject to his control

14   in the manner I have indicated, were for the purpose of distribution to another.

15                                   "Controlled Substance"

16         Finally, I instruct you that, as a matter of law, crack cocaine is a "controlled substance."

1    Instruction No. 15: Predicate Narcotics Conspiracy – Second Element: Membership in the
2    Conspiracy

3         For the second element, the Government must prove that the Defendant knowingly,

4    intentionally and willfully became a participant in, or a member of, the conspiracy. "Knowingly"

5    means to act consciously and voluntarily, rather than by mistake or accident or mere

6    inadvertence. "Intentionally" is considered synonymous with "willfully." The word "willfully"

7    means that the act was committed voluntarily and purposely, with the intent to do something the

8    law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must

9    have acted with the intent to do something the law forbids before you can find that the person

10   acted "willfully," the person need not be aware of the specific law or rule that his conduct may be

11   violating.

12        To become a member of a conspiracy, a defendant need not have known the identities of

13   each member, nor their number, nor all of their activities. A defendant need not have been fully

14   informed of all the details, or the scope, of a conspiracy. A defendant need not have joined in all

15   of a conspiracy's unlawful objectives. Proof that the defendant had a financial interest in the

16   outcome of the scheme is not essential.

17        A conspirator's liability is not measured by the extent or duration of his participation.

18   Each member may perform separate and distinct acts and may perform them at different times.

19   Some conspirators may play major roles, while others may play minor roles. An equal role is not

20   what the law requires. In fact, even a single act may be sufficient to draw a defendant within the

21   circle of a conspiracy.

25

1        I want to caution you, however, that the Defendant's mere presence at the scene of an

2   alleged crime or at a meeting or some other gathering does not, by itself, make him a member of

3   a conspiracy. Similarly, mere association with one or more members of a conspiracy does not

4   automatically make the defendant a member. A person may know or be friendly or communicate

5   in any manner with a criminal without being a criminal himself. Mere similarity of conduct or

6   the fact that persons may have assembled together and discussed common aims and interests

7   does not necessarily establish membership in the conspiracy. Furthermore, a defendant's mere

8   knowledge of or acquiescence in an unlawful plan, without participation, is not sufficient. The

9   fact that a defendant, without knowledge, merely happens to act in a way that furthers the

10  purposes or objectives of the conspiracy does not automatically make the defendant a member.

11       More is required under the law. The Defendant must have intentionally engaged, advised

12  or assisted in the conspiracy with knowledge of its unlawful purpose and with the specific

13  intention of furthering one or more of its objectives. He thereby becomes a knowing and willing

14  participant in the unlawful agreement – that is to say, a conspirator.

26

1          <u>Instruction No. 16: Count One (Murder Using a Firearm)</u>

2          Having defined aiding and abetting and the elements of a narcotics conspiracy, I will now

3 instruct you on the elements of the offense charged in Count One.  Count One charges that the

4 Defendant knowingly used and carried a firearm in relation to a drug trafficking crime—or aided

5 and abetted another person to do the same—resulting in the murder of Caprice Jones, in violation

6 of a federal law referred to as Section 924(j) of Title 18 of the United States Code.

7          That provision makes it a crime for any person, "in the course of a violation of [Section

8 924(c)], [to] cause[] the death of a person through the use of the firearm."  Section 924(c) makes

9 it a crime for any person "during and in relation to any [federal] crime of violence or drug

10 trafficking crime [to] use[] or carr[y] a firearm," or, "in furtherance of any such crime, [to]

11 possess[] a firearm."

12          Accordingly, in order to sustain its burden of proof as to Count One, the Government must

13 prove each of the following five elements beyond a reasonable doubt:

14          <u>First</u>, that on or about June 21, 2000, the Defendant used or carried or possessed a

15 firearm or any combination of those acts, or aided and abetted another to use or carry or

16 possess a firearm or any combination of those acts;

17          <u>Second</u>, that the use or carrying of the firearm was during and in relation to a drug

18 trafficking crime, or possession of the firearm was in furtherance of a drug trafficking crime;

19          <u>Third</u>, that the Defendant caused, or aided and abetted another to cause, the death of

20 another person through the use of a firearm;

27

1               <u>Fourth</u>, that the death of that person qualifies as a murder under federal law, as I will

2     define that term for you in a moment; and

3               <u>Fifth</u>, that the Defendant acted knowingly.

1    Instruction No. 17: Count One (Murder Using a Firearm) – First Element: Use, Carry or Possess

2         The first element the Government must prove beyond a reasonable doubt is that on or about

3    the dates set forth in the Indictment the Defendant used, carried, or possessed a firearm or aided

4    and abetted another to use, carry, or possess a firearm.

5         With respect to "using" a firearm, it is not necessary for the Government to prove that the

6    Defendant, or the person he aided and abetted or intentionally caused to use a firearm, actually

7    fired or attempted to fire the weapon. Brandishing, displaying, or even referring to the weapon so

8    that the others present knew the Defendant had the firearm available if needed would also

9    constitute use of the firearm.

10        With respect to "carrying" a firearm, the Government must prove beyond a reasonable

11   doubt that the Defendant, or the person he aided and abetted or intentionally caused to carry a

12   firearm, had the weapon within his control in such a way that it furthered the commission of the

13   narcotics conspiracy.

14        With respect to "possessing" a firearm, the Government must prove beyond a reasonable

15   doubt that the Defendant, or the person he aided and abetted or intentionally caused to possess a

16   firearm, either had actual physical possession of the firearm or had substantial custody or control

17   over it. Furthermore, the mere possession of the firearm at the scene of a crime or simultaneous

18   with the possession of drugs is not sufficient; such possession must have been in furtherance of

19   the narcotics conspiracy.

29

1    <u>Instruction No. 18: Count One (Murder Using a Firearm) – Second Element: During and in</u>
2                          <u>Relation to a Drug Trafficking Crime</u>

3         The second element that the Government must prove beyond a reasonable doubt is that the

4    Defendant either used or carried a firearm during and in relation to a drug trafficking crime, or

5    possessed a firearm in furtherance of such a crime.  Possession in furtherance, as I explained

6    earlier, requires that the firearm must have played some part in furthering the crime in order for

7    this element to be satisfied.  The mere possession of the firearm at the scene of a crime or

8    simultaneous with the possession of drugs is not sufficient; such possession, use, or carrying must

9    have been in furtherance of the narcotics conspiracy.

10        The drug trafficking crime that the Defendant allegedly used, carried, or possessed the

11   firearm in furtherance of was a conspiracy to distribute and possess with intent to distribute crack

12   cocaine.  I have already instructed you on law regarding drug conspiracies, and you should apply

13   those instructions here.

30

1    <u>Instruction No. 19: Count One (Murder Using a Firearm) – Third Element: Causing Death</u>

2         The third element the Government must prove beyond a reasonable doubt is that the

3    Defendant's conduct caused the death of Caprice Jones. The Defendant may be found to have

4    caused the death of Caprice Jones if his conduct was a substantial factor in causing that death

5    and Caprice Jones would not have died except for the Defendant's conduct. The Defendant's

6    conduct was a substantial factor if it had such an effect in producing Caprice Jones's death as to

7    lead a reasonable person to regard the Defendant's conduct as a cause of death.

8         The death of Caprice Jones may have had more than one cause. The Government need

9    not prove that the conduct of the Defendant was the only cause of death. You need not find that

10   the Defendant you are considering shot the victim or that he committed the final, fatal act. The

11   Government need prove only that the conduct of the Defendant was a substantial factor in

12   causing the victim's death

31

1   <u>Instruction No. 20: Count One (Murder Using a Firearm) – Fourth Element: Death Qualifies as</u>
2   <u>Federal Murder</u>

3   　　　　　The fourth element of Count One that the Government must prove beyond a

4   reasonable doubt is that the death of Caprice Jones constituted murder.  The definition of murder

5   for this purpose is "the unlawful killing of a human being, with malice aforethought."  Murder

6   includes "any . . . willful, deliberate, malicious, and premeditated killing."

7   　　　　　To prove that the death of Caprice Jones qualifies as murder under Section 1111, the

8   Government must establish beyond a reasonable doubt that the Defendant unlawfully killed

9   Jones—or aided and abetted, or caused, the killing of Jones—as charged; and that the Defendant

10   acted with malice aforethought.

11   　　　　　It is the Government's burden to prove that the Defendant's conduct was a direct cause of

12   Jones's death. This means that the Government must prove that the Defendant inflicted an injury

13   or injuries upon Jones from which he died or aided and abetted, or caused, someone else in doing

14   so.  An act is done unlawfully if it was done without a legally recognized justification or excuse.

15   　　　　　Malice aforethought is the state of mind that would cause a person to act without regard to

16   the life of another.  To satisfy this element, the Defendant must have acted consciously, with the

17   intent to kill another person.  This element is satisfied if the Government proves beyond a

18   reasonable doubt that the Defendant intended to kill another person.  However, the Government

19   need not prove a subjective intent to kill on the part of the Defendant.  It would be sufficient to

20   satisfy this element if the Government proved reckless and wanton conduct on the part of the

21   Defendant which grossly deviated from a reasonable standard of care such that he or she was aware

32

1 of the serious risk of death.  In order to establish this element, the Government must prove that the

2 Defendant acted willfully, with a bad or evil purpose to break the law.  However, the Government

3 need not prove spite, malevolence, hatred or ill will toward the victim.  The Government also need

4 not prove that the Defendant intended to kill the person who died, as opposed to a different person.

5 Under the law a defendant who planned to murder one person and, in so attempting, killed another

6 is guilty of the murder of the unplanned victim.

1    Instruction No. 21: Count One (Murder Using a Firearm) – Fifth Element: Knowingly

2    The final element the Government must prove beyond a reasonable doubt with respect to

3    Count One is that the Defendant knew that he was using, carrying, or possessing a firearm and that

4    he acted knowingly in doing so.

5    To satisfy this element, you must find that the Defendant had knowledge that what he was

6    carrying or using was a firearm as that term is generally used.  An act is done knowingly if done

7    purposefully and voluntarily as opposed to mistakenly or accidentally.  You will recall that I

8    instructed you earlier that to find that someone acted knowingly requires you to make a finding as

9    to that person's state of mind.  In order for the Government to satisfy this element, it must prove

10   that the Defendant knew what he was doing—for example, that he knew that he was possessing or

11   carrying a firearm in the commission of a crime of violence or a drug trafficking crime.  It is not

12   necessary, however, for the Government to prove that the Defendant knew that he was violating

13   any particular law.

34

1          <u>Instruction No. 22: Count Two (Killing While Engaged in Narcotics Conspiracy)</u>

2          I will now instruct you on the elements of the offense charged in Count Two.  Count Two

3     charges that, while engaged in a conspiracy to distribute 280 grams or more of crack cocaine, the

4     Defendant caused another person to shoot and kill Caprice Jones, in violation of a federal law

5     referred to as Section 848(e) of Title 21 of the United States Code.

6          That provision makes it a crime for any person who is "engaging in [certain narcotics

7     offenses] [to] intentionally kill[] or counsel[], command[], induce[], procure[], or cause[] the

8     intentional killing of an individual and such killing results."

9          Accordingly, in order to sustain its burden of proof as to Count Two, the Government must

10    prove each of the following four elements beyond a reasonable doubt:

11         <u>First</u>, that in or about June 2000, the Defendant was engaged in a conspiracy to

12    distribute crack cocaine;

13         <u>Second</u>, that that narcotics conspiracy involved at least 280 grams or more of crack

14    cocaine;

15         <u>Third</u>, that while engaged in that narcotics conspiracy, the Defendant either

16    intentionally killed, or aided and abetted the killing of, another person or counseled,

17    commanded, induced, procured, or caused the intentional killing of that person by someone

18    else; and

19         <u>Fourth</u>, that the killing actually resulted from the Defendant's actions.

1    Instruction No. 23: Count Two (Killing While Engaged in Narcotics Conspiracy) – First and
2                Second Elements: Narcotics Conspiracy and Drug Weight

3          As I just mentioned, to find the Defendant guilty of Count Two, you must determine first

4    that the Defendant was engaged in a narcotics conspiracy, and second, as to this Count, that the

5    conspiracy involved at least 280 grams of crack cocaine.

6          I have already explained to you the elements of a narcotics conspiracy, and you should

7    apply those instructions here.

8          If, but only if, you conclude that the Government has proved beyond a reasonable doubt

9    that the Defendant is guilty of participating in the conspiracy described above, you must then

10   determine whether they intended the distribution of at least 280 grams of crack cocaine.

11         To calculate this amount, you should include (1) any transactions in furtherance of the

12   conspiracy in which the Defendant personally participated, and (2) any transactions in

13   furtherance of the conspiracy that the Defendant reasonably foresaw even though he did not

14   personally participate in these sales. As I have already instructed you, your findings on quantity,

15   like your other findings, must be unanimous and beyond a reasonable doubt.

36

1    <u>Instruction No. 24: Count Two (Killing While Engaged in Narcotics Conspiracy) – Third and</u>
2    <u>Fourth Elements: Counsel, Command, Induce, Procure, or Cause an Intentional Killing</u>

3         The third and fourth elements the Government must prove beyond a reasonable doubt are

4    that the Defendant, while engaged in that narcotics conspiracy involving at least 280 grams of

5    crack cocaine, intentionally killed the person specified in the Indictment, or aided and abetted

6    another person in doing so, or counseled, commanded, induced, procured, or caused the killing of

7    that person.  I will define those terms for you now.

8                                        "While Engaged In"

9         To show that the killing of the person specified in the Indictment occurred while the

10   Defendant was engaged in a narcotics conspiracy, the Government must prove more than simply

11   a temporal connection between the killing and the narcotics conspiracy.  The Government must

12   show that a substantive connection existed between the alleged conspiracy and the killing, in other

13   words, that the alleged conspiracy was one purpose of the killing.  If you found that the murder

14   was wholly unconnected to the alleged narcotics conspiracy or was simply coincidental to it, then

15   this element will not be satisfied.

16                                       "Intentionally Killed"

17        A person intentionally kills another person when he does so deliberately and purposefully.

18   That is, the defendant's actions must have been his conscious objective rather than the product of

19   a mistake or accident or mere negligence or some other innocent reason.  However, when a

20   defendant plans to murder one person and, in so attempting, kills another person, he is guilty of

21   the murder of the unplanned victim.

1                          <u>"Counsel, command, induce, procure and cause"</u>

2          To meet its burden of proof, the Government need not prove that the Defendant directly

3    caused the death of Caprice Jones.  The statute takes into consideration that while certain people

4    might have direct involvement in an intentional killing, others can be held responsible even if they

5    play a less direct role.  Thus, this element can be satisfied if you find beyond a reasonable doubt

6    that the Defendant aided, abetted, counseled, commanded, induced, procured or caused the killing

7    of Caprice Jones.  I have already instructed you on the meaning of these terms within the aiding

8    and abetting instruction, and you should consider that in deciding whether this element is met.

9          The fourth element that the Government must prove beyond a reasonable doubt is that the

10   death actually resulted from the acts of the Defendant or a person for whose conduct he is

11   criminally responsible.

1          Instruction No. 25: Count Three (Murder in Aid of Racketeering)

2          I will now instruct you on the elements of the offense charged in Count Three. Count Three

3    charges the Defendant with causing the murder of Caprice Jones, or aiding and abetting another

4    person in doing so, at least in part for the purpose of maintaining or increasing his position in a

5    racketeering enterprise, in violation of a law known as Section 1959(a)(1) of Title 18 of the United

6    States Code.

7          That provision makes it a crime for any person, "for the purpose of gaining entrance to or

8    maintaining or increasing position in an enterprise engaged in racketeering activity, [to] murder[]

9    . . . any individual in violation of the laws of any State []."

10         Accordingly, in order to sustain its burden of proof as to Count Three, the Government

11   must prove each of the following four elements beyond a reasonable doubt:

12         First, that a racketeering enterprise existed;

13         Second, that that enterprise engaged in racketeering activity;

14         Third, that the activities of the enterprise affected interstate commerce;

15         Fourth, that the Defendant committed a murder, or aided and abetted another to commit a

16   murder, in violation of New York state law; and

17         Fifth, that the Defendant's general purpose in doing so was to gain a position, or maintain

18   or increase his existing position, in the enterprise.

39

1    <u>Instruction No. 26: Count Three (Murder in Aid of Racketeering) – First Element: Existence of</u>
2    <u>an Enterprise</u>

3           The first element the Government must prove beyond a reasonable doubt as to

4    Count Three is that the enterprise alleged in the Indictment, the "Berry Crew," existed.  Under the

5    racketeering statute, an enterprise includes a group of individuals who are associated in fact

6    although not a legal entity.  The enterprise does not have to have a particular name, or, for that

7    matter, have any name at all.  The enterprise does not have to be registered or licensed as an

8    enterprise.  It does not have to be a commonly recognized legal entity, such as a corporation, a

9    trade union, a partnership, or the like.

10          An enterprise may be a group of people informally associated together for a common

11    purpose of engaging in a course of conduct.  This group may be organized for a legitimate and

12    lawful purpose or it may be organized for an unlawful purpose.  In addition to having a common

13    purpose, this group of people must have a core of personnel who function as a continuing unit.

14    Furthermore, the enterprise must continue to exist in substantially similar form over a period of

15    time. This does not mean that the membership must remain exactly identical, but the enterprise

16    must have a recognizable core that continues through a substantial period of time.

17          The existence of an enterprise may be proven by what it does.  Thus, you may rely on proof

18    of various racketeering acts committed by the members of the enterprise to establish the existence

19    of the charged enterprise, as I will discuss in a moment. While the same evidence may prove both

20    the racketeering activity and the existence of the organization, you should keep in mind that those

21    are distinct concepts.

40

1        Count Three of the Indictment alleges that an enterprise existed that the Indictment refers

2    to as the "Berry Crew."  This name is simply a form of reference adopted for the purposes of the

3    Indictment to describe the group of individuals who participated in the alleged racketeering

4    activity.  As I just mentioned, an enterprise need not have a formal name or any name at all.

5        The Indictment alleges that the purposes of the enterprise included enriching the members

6    and associates of the enterprise through the distribution and sale of crack cocaine; preserving and

7    protecting the power, territory, and profits of the enterprise through acts of violence and threats of

8    violence; and promoting and enhancing the enterprise and the activities of its members and

9    associates.

10       In summary, if the Government proves beyond a reasonable doubt that there was a group

11   of people characterized by a common purpose or purposes, an ongoing formal or informal

12   organization or structure, and core personnel who functioned as a continuing unit during a

13   substantial period within the time frame charged in the Indictment, then an enterprise existed.

1    <u>Instruction No. 27: Count Three (Murder in Aid of Racketeering) – Second Element:</u>
2    <u>Racketeering Activity</u>

3        The second element that the Government must prove in connection with Count Three is

4    that the enterprise was engaged in racketeering activity.  Racketeering activity simply means

5    certain types of criminal acts, which in this case includes (1) acts involving murder, conspiracy to

6    commit murder, and attempted murder, in violation of New York state law; and (2) acts involving

7    the distribution of narcotics, specifically crack cocaine, as well as conspiracy to commit, and aiding

8    and abetting the commission of, distribution of narcotics, in violation of federal law.  It is for you

9    to determine whether the enterprise engaged in these activities as charged. You should give the

10   words "engaged in" their ordinary, everyday meaning. For an enterprise to be engaged in

11   racketeering activity it is enough to show that the enterprise committed or was planning to commit

12   some racketeering activity within a period of time short enough under all of the circumstances so

13   that it is appropriate to say that the enterprise was engaged in racketeering activity. You do not

14   need to find that the enterprise was engaged in all of the types of racketeering activity I am about

15   to describe, as long as you conclude that the enterprise was engaged in some racketeering activity.

16                                    <u>New York Intentional Murder</u>

17       As I just explained, the Indictment alleges that one of the categories of criminal violations

18   in which the enterprise was engaged were acts involving murder, conspiracy to murder, and

19   attempted murder in violation of New York State law.  I will describe those crimes now.

20       In order for you to find that a person committed murder under New York State law, the

21   Government must prove beyond a reasonable doubt that:

                                            42

1       <u>First</u>, that the individual caused the death of the victim, or aided and

2       abetted the same; and

3       <u>Second</u>, that the individual did so with the intent to cause the death

4       of the victim or another person.

5       In this context, to prove that the individual caused or attempted to cause a victim's death,

6   or aided and abetted another who did so, the Government must prove that the victim's death was

7   or would have been a sufficiently direct cause of the individual's conduct.  Under New York law,

8   a person's conduct is a sufficiently direct cause of death when: first, the conduct is an actual

9   contributory cause of the death; and second, the death was a reasonably foreseeable result of the

10  conduct. Let me explain each of those two concepts.

11      An individual's conduct is an actual contributory cause of the death of another when that

12  conduct forged a link in the chain of causes which actually brought about the death—in other

13  words, when the conduct set in motion or continued in motion the events which ultimately resulted

14  in the death.  An obscure or merely probable connection between the conduct and the death will

15  not suffice.  At the same time, if the individual's conduct is an actual contributory cause of the

16  death of another, then it does not matter that such conduct was not the sole cause of the death, or

17  that a pre-existing medical condition also contributed to the death, or that the death did not

18  immediately follow the injury.

43

1    Second, death is a reasonably foreseeable result of an individual's conduct when the death

2    should have been foreseen as being reasonably related to the actor's conduct.  It is not required

3    that the death was the inevitable result or even the most likely result.

4    I have already instructed you on what it means for someone to act with "intent" to cause

5    the death of another person, and those instructions apply here as well.  In addition, as before, there

6    is no requirement that the person who is murdered or injured during an attempted murder be the

7    same person who was intended to be murdered.  Thus, the intent element is satisfied when a person

8    intends to kill one person, but, instead, kills or injures another person.

9                                        New York Attempt

10    Under New York law, "a person is guilty of an attempt to commit a crime when, with intent

11    to commit a crime, he engages in conduct which tends to effect the commission of such crime."

12    You may only find that a person attempted to commit a crime if you find that he, or those he was

13    aiding and abetting, were on the verge of actually committing it.  Mere preparation is not sufficient.

14    The acts committed by the person, or those he is aiding and abetting, must be those acts that are

15    required to carry the project forward within "dangerous proximity" of the criminal end to be

16    attained.

17                                Distribution of Controlled Substances

18    The other category of racketeering activity that the Government alleges the enterprise was

19    engaged in is the distribution and possession with intent to distribute of crack cocaine.  I have

20    already instructed you on what the Government must prove beyond a reasonable doubt in

21    connection with this narcotics-related activity, and those instructions apply here as well.

                                               44

1    <u>Instruction No. 28: Count Three (Murder in Aid of Racketeering) – Third Element: Interstate</u>
2    <u>Commerce</u>

3        The third element the Government must prove beyond a reasonable doubt with respect to

4    Count Three is that the criminal enterprise itself, or the racketeering activities of those associated

5    with it, had some effect on interstate commerce.  This effect on interstate commerce could have

6    occurred in any way and it need only have been minimal.

7        Interstate commerce includes the movement of goods, services, money, and individuals

8    between states.  Congress has determined that all narcotics activity, even purely local narcotics

9    activity, has a substantial effect on interstate commerce.  Thus, if you find that, in the course of

10   the racketeering activities, members of the enterprise trafficked in narcotics, you may find this

11   element satisfied.  It is not necessary for the Government to prove that any particular acts affected

12   interstate commerce or even that acts that the Defendant personally committed affected interstate

13   commerce. It need only prove that some act or acts of the enterprise -- even perfectly legal acts of

14   the enterprise -- had such an effect on interstate commerce. It is not necessary for you to find that

15   the Defendant knew the enterprise was engaged in interstate commerce.

1  <u>Instruction No. 29: Count Three (Murder in Aid of Racketeering) – Fourth Element: Murder in</u>
2  <u>Violation of New York Law</u>

3  The fourth element that the Government must prove in connection with Count Three is

4  that the Defendant murdered Caprice Jones, or aided and abetted another in murdering Caprice

5  Jones, in violation of New York law.

6  I have already explained for you the content and elements of the laws that define murder

7  in the State of New York and the concept of aiding and abetting liability.  I instruct you to follow

8  those definitions here to determine if the Government has satisfied its burden as to this element of

9  Count Three.

1    <u>Instruction No. 30: Count Three (Murder in Aid of Racketeering) – Fifth Element: Purpose of</u>
2    <u>Maintaining or Increasing Position in Enterprise</u>

3         The last element the Government must prove with respect to Count Three is that the

4    Defendant acted for the purpose of gaining entrance to, maintaining a position in, or increasing a

5    position in that enterprise.

6         First, the Government must prove beyond a reasonable doubt is that the Defendant had or

7    was seeking a position in the charged racketeering enterprise. To establish this element, it is not

8    sufficient for the Government to demonstrate that the Defendant did business with the enterprise;

9    rather, the Government must prove that the Defendant was actively engaged in promoting the

10   illegal activities of the enterprise.

11        Second, the Government must prove that the Defendant's general purpose in committing

12   the crime in question was to increase his position in or maintain his position in the enterprise.

13   Thus, your focus in this element is on the general purpose of the Defendant.  The Government

14   does not need to prove that maintaining or increasing his position in the enterprise was the

15   Defendant's only motive or even his principal motive, so long as it was a substantial motivating

16   factor in the Defendant's decision to participate in the murder.

**OTHER INSTRUCTIONS**

Instruction No. 31: Venue

In addition to all of the elements I have just described, you must also consider the issue of venue, namely, whether the crime occurred within the Southern District of New York. The Southern District of New York includes Manhattan, the Bronx, and Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan counties.

Venue is established if any part of the charged crime occurred in the Southern District of New York.

On this issue, and this issue alone, the Government does not need to prove venue beyond a reasonable doubt, but only by a preponderance of the evidence. The Government has satisfied its burden on this issue if you conclude that it is more likely than not that venue exists. But I remind you that the Government must prove all other elements of the offense beyond a reasonable doubt.

If you find that the Government has failed to prove venue by a preponderance of the evidence, then you must acquit the Defendant.

**GENERAL INSTRUCTIONS**

1

2          <u>Instruction No. 32: Direct and Circumstantial Evidence</u>

3          I turn now to some general instructions.  There are two types of evidence that you may

4   properly use in reaching your verdict.  One type of evidence is direct evidence.  One kind of

5   direct evidence is a witness's testimony about something the witness knows by virtue of her or

6   his own senses—something the witness has seen, felt, touched or heard.  Direct evidence may

7   also be in the form of exhibit.

8          The other type of evidence is circumstantial evidence.  Circumstantial evidence is

9   evidence that tends to prove one fact by proof of other facts.  There is a simple example of

10  circumstantial evidence that is often used in this courthouse.

11          Assume that when you came into the courthouse this morning the sun was shining and it

12  was a nice day.  Assume that there are blinds on the courtroom windows that are drawn and that

13  you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is

14  dripping wet.  Someone else then walks in with a raincoat that is also dripping wet.

15          Now, you cannot look outside the courtroom and you cannot see whether or not it is

16  raining.  So you have no direct evidence of that fact.  But on the combination of the facts that I

17  have asked you to assume, it would be reasonable and logical for you to conclude that between

18  the time you arrived at the courthouse and the time these people walked in, it had started to rain.

19          That is all there is to circumstantial evidence.  You infer on the basis of reason and

20  experience and common sense from an established fact the existence or nonexistence of some

21  other fact.

49

1          Many facts, such as a person's state of mind, can only rarely be proved by direct

2     evidence.  Circumstantial evidence is of no less value than direct evidence.  It is a general rule

3     that the law makes no distinction between direct and circumstantial evidence, but simply requires

4     that before convicting Mr. Berry you, the jury, must be satisfied of Mr. Berry's guilt beyond a

5     reasonable doubt from all the evidence in the case.

1           <u>Instruction No. 33: Inferences</u>

2           During the trial, and as I give you these instructions, you have heard and will hear the

3    term "inference."  For instance, in their closing arguments, the attorneys have asked you to infer,

4    based on your reason, experience, and common sense, from one or more established facts, the

5    existence of some other fact.  I have instructed you on circumstantial evidence and that it

6    involves inferring a fact based on other facts, your reason, and common sense.

7           What is an "inference"?  What does it mean to "infer" something?  An inference is not a

8    suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists

9    based on another fact that you are satisfied exists.

10          There are times when different inferences may be drawn from facts, whether proven by

11   direct or circumstantial evidence.  The Government asks you to draw one set of inferences, while

12   Mr. Berry asks you to draw another.  It is for you, and you alone, to decide what inferences you

13   will draw.

14          The process of drawing inferences from facts in evidence is not a matter of guesswork or

15   speculation.  An inference is a deduction or conclusion that you, the jury, are permitted but not

16   required to draw from the facts that have been established by either direct or circumstantial

17   evidence.  In drawing inferences, you should exercise your common sense.

18          Therefore, while you are considering the evidence presented to you, you may draw, from

19   the facts that you find to be proven, such reasonable inferences as would be justified in light of

20   your experience.

51

1        Here again, let me remind you that, whether based on direct or circumstantial evidence,

2    or on the logical, reasonable inferences drawn from such evidence, you must be satisfied of the

3    guilt of the Defendant beyond a reasonable doubt before you may convict. Some inferences,

4    however, are impermissible.  You may not infer that Mr. Berry is guilty of participating in

5    criminal conduct if you find merely that he was present at the time the crime was being

6    committed and had knowledge that it was being committed.  Nor may you use evidence that I

7    have instructed you was admitted for a limited purpose for any inference beyond that limited

8    purpose.

9        In addition, you may not infer that Mr. Berry is guilty of participating in criminal conduct

10    merely from the fact that he associated with other people who were guilty of wrongdoing or

11    merely because he has or had knowledge of the wrongdoing of others.

1    <u>Instruction No. 34: Number of Witnesses and Uncontradicted Testimony (If Applicable)</u>

2         The fact that one party called more witnesses and introduced more evidence than the

3    other does not mean that you should necessarily find the facts in favor of the side offering the

4    most witnesses.  By the same token, you do not have to accept the testimony of any witness who

5    has not been contradicted or impeached, if you find the witness not to be credible.  You also have

6    to decide which witnesses to believe and which facts are true.  To do this you must look at all the

7    evidence, drawing upon your own common sense and personal experience.  (After examining all

8    the evidence, you may decide that the party calling the most witnesses has not persuaded you

9    because you do not believe its witnesses, or because you do believe the fewer witnesses called by

10   the other side.)

11        In a moment, I will discuss the criteria for evaluating credibility; for the moment,

12   however, you should keep in mind that the burden of proof is always on the Government and the

13   Defendant is not required to call any witnesses or offer any evidence, since he is presumed to be

14   innocent.

53

1          <u>Instruction No. 35: Credibility of Witnesses</u>

2          You have had the opportunity to observe the witnesses.  It is your job to decide how

3    believable each witness was in his or her testimony.  You are the sole judges of the credibility of

4    the witnesses.  How do you evaluate the credibility or believability of the witnesses?  The answer

5    is that you use your common sense, judgment, and experience.  Common sense is your greatest

6    asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and

7    candid?  Or did the witness appear evasive, as though the witness was trying to hide

8    something?  How responsive was the witness to the questions asked on direct examination and

9    on cross-examination?   Consider the witness's demeanor, manner of testifying, and accuracy of

10   the witness's recollection.  In addition, consider how well the witness recounted what was heard

11   or observed, as the witness may be honest but mistaken.

12         If you find that a witness is intentionally telling a falsehood, that is always a matter of

13   importance that you should weigh carefully.  If you find that any witness has lied under oath at

14   this trial, you should view the testimony of such a witness cautiously and weigh it with great

15   care.  You may reject the entirety of the witness's testimony, part of it or none of it.  It is for you

16   to decide how much of a witness's testimony, if any, you wish to credit.  A witness may be

17   inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and

18   truthful in other respects.  It is for you to determine whether such untruths or inconsistencies are

19   significant or inconsequential, and whether to accept or reject all or to accept some and reject the

20   balance of the testimony of any witness.

1        In evaluating credibility of the witnesses, you should take into account any evidence that

2    the witness who testified may benefit in some way from the outcome of this case.  Therefore, if

3    you find that any witness whose testimony you are considering may have an interest in the

4    outcome of this trial, then you should bear that factor in mind when evaluating the credibility of

5    his or her testimony and accept it with great care.  This is not to suggest that any witness who has

6    an interest in the outcome of a case would testify falsely.  It is for you to decide to what extent, if

7    at all, the witness's interest has affected or colored his or her testimony.

8        You are not required to accept testimony even though the testimony is not contradicted

9    and the witness's testimony is not challenged.  You may decide because of the witness's bearing

10   or demeanor, or because of the inherent improbability of the testimony, or for other reasons

11   sufficient to yourselves that the testimony is not worthy of belief.  On the other hand, you may

12   find, because of a witness's bearing and demeanor and based upon your consideration of all the

13   other evidence in the case, that the witness is truthful.

14       Thus, there is no magic formula by which you can evaluate testimony.  You bring to this

15   courtroom all your experience and common sense.  You determine for yourselves in many

16   circumstances the reliability of statements that are made by others to you and upon which you

17   are asked to rely and act.  You may use the same tests here that you use in your everyday

18   lives.  You may consider the interest of any witness in the outcome of this case and any bias or

19   prejudice of any such witness, and this is true regardless of who called or questioned the witness.

20       You should judge the Defendant's testimony in the same way that you judge the

21   testimony of any other witness.

1    <u>Instruction No. 36: Credibility of Witnesses: Impeachment by Prior Inconsistent Statement</u>

2          You have heard evidence that a witness made a statement on an earlier occasion which

3    counsel argues is inconsistent with the witness's trial testimony.  Evidence of a prior inconsistent

4    statement is not to be considered by you as affirmative evidence bearing on Mr. Berry's guilt.

5    Evidence of the prior inconsistent statement was placed before you for the more limited purpose

6    of helping you decide whether to believe the trial testimony of the witness who contradicted

7    himself.  If you find that the witness made an earlier statement that conflicts with his trial

8    testimony, you may consider that fact in deciding how much of his trial testimony, if any, to

9    believe.

10          In making this determination, you may consider whether the witness purposely made a

11   false statement or whether it was an innocent mistake; whether the inconsistency concerns an

12   important fact or whether it had to do with a small detail; whether the witness had an explanation

13   for the inconsistency; and whether that explanation appealed to your common sense.

14          It is exclusively your duty, based on all of the evidence and your own good judgment, to

15   determine whether the prior statement was inconsistent, and if so how much, if any, weight to be

16   given to the inconsistent statement in determining whether to believe all or part of the witness's

17   testimony.

1           <u>Instruction No. 37: Law Enforcement Witness</u>

2           You have heard testimony of a witness who is a law enforcement officer.  The law is that

3   the testimony of a witness who is employed by the Government is not, by virtue of the witness's

4   position, deserving of more or less consideration or greater or lesser weight than that of any other

5   witness, and the testimony of such a witness should not be regarded as more or less truthful or

6   accurate than that of any other witness simply based on the witness's employment.

7           At the same time, it is legitimate for defense counsel to try to attack the credibility of a

8   law enforcement witness on the grounds that his or her testimony may be colored by a personal

9   or professional interest in the outcome of the case.

10          It is your decision, after reviewing all the evidence, whether to accept the testimony of

11  the law enforcement witnesses and to give that testimony whatever weight, if any, you find it

12  deserves.

<u>Instruction No. 38: Expert Witnesses</u>

1

2          You have heard testimony from what we call expert witnesses.  An expert witness is

3   someone who by education or experience has acquired learning or experience in a specialized area

4   of knowledge.  Such a witness is permitted to express his opinions on matters about which he has

5   specialized knowledge and training.  The parties present expert testimony to you on the theory that

6   someone who is experienced in the field can assist you in understanding the evidence or in reaching

7   an independent decision on the facts.

8          Your role in judging credibility applies to experts as well as other witnesses.  In weighing

9   an expert's testimony, you may consider the expert's qualifications, his opinions, and his reasons

10  for testifying, as well as all the other considerations that ordinarily apply, including all the other

11  evidence in the case.  You may give expert testimony whatever weight, if any, that you find that it

12  deserves in light of all the evidence in this case.  If you find the opinion of an expert is based on

13  sufficient data, education and experience, and the other evidence does not give you reason to doubt

14  his or her conclusions, you would be justified in placing reliance on his or her testimony.  However,

15  you should not accept witness testimony simply because the witness is an expert.  If you decide

16  that the opinion of an expert was not based on sufficient education or experience or on sufficient

17  data, or is questionable for any reason, or is outweighed, in your judgment, by other evidence in

18  the case, then you might give the opinion of the expert less or no weight.  The determination of

19  the facts in this case rests solely with you.

1      <u>Instruction No. 39: Accomplice/Cooperating Witness Testimony</u>

2    You have heard from witnesses who testified that they committed crimes including charges

3 arising out of the same facts as this case.  But first let me make it clear that you are instructed that

4 you are to draw no conclusions or inferences of any kind about the guilt of the Defendant on trial

5 from the fact that one or more prosecution witnesses pleaded guilty to similar charges.  The

6 decision of those witnesses to plead guilty was a personal decision those witnesses made about

7 their own guilt.  It may not be used by you in any way as evidence against or unfavorable to the

8 Defendant on trial here.

9    Let me next give you a few additional instructions on the subject of what we call

10 "cooperating witnesses."  The Government frequently argues, as it may do, that it must rely on the

11 testimony of witnesses who admit to participating in the alleged crimes at issue.  It asserts that it

12 must take its witnesses as it finds them and frequently must use such testimony in a criminal

13 prosecution, because otherwise it would be difficult or impossible to detect and prosecute

14 wrongdoers.  For these very reasons, the law allows the use of testimony from cooperating

15 witnesses.  Indeed, it is the law in federal courts that the testimony of a single cooperating witness

16 may be enough in itself for conviction, if the jury believes that the testimony establishes guilt

17 beyond a reasonable doubt.

18    Cooperating witness testimony should be given such weight as it deserves in light of the

19 facts and circumstances before you, taking into account the witness's demeanor, candor, the

20 strength and accuracy of the witness's recollection, the witness's background, and the extent to

21 which the testimony is or is not corroborated by other evidence in the case.

59

1    The testimony of cooperating witnesses should be scrutinized with special care and caution

2    because such witnesses may believe that it is in their interest to give testimony favorable to the

3    Government. The fact that a witness is an accomplice or cooperator can be considered by you as

4    bearing upon his credibility. You may consider whether a cooperating witness, like any other

5    witness in this case, has an interest in the outcome of the case and, if so, whether it has affected

6    his or her testimony.  You should ask yourselves whether these so-called cooperating witnesses

7    would benefit more by lying, or by telling the truth.  Was their testimony made up in any way

8    because they believed or hoped that they would somehow receive favorable treatment by testifying

9    falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If

10   you believe that the witness was motivated by hopes of personal gain, was the motivation one

11   which would cause him to lie, or was it one which would cause him to tell the truth?  Did this

12   motivation color his testimony?  It does not follow, however, that simply because a person has

13   admitted to participating in one or more crimes, he is incapable of giving a truthful version of what

14   happened.

15   You also heard testimony about cooperation agreements between the Government and

16   witnesses.  I caution you that it is no concern of yours why the Government made an agreement

17   with a witness.  The existence of such an agreement itself and its effect on the witness may be

18   considered by you in determining credibility.  Your sole concern is whether a witness has given

19   truthful and accurate testimony here in this courtroom before you.

20   As with any witness, let me emphasize that the issue of credibility need not be decided in

21   an all-or-nothing fashion.  Even if you find that a witness testified falsely or inaccurately in one

1    part, you still may accept his or her testimony in other parts, or may disregard all of it.  That is a

2    determination entirely for you, the jury.

1          <u>Instruction No. 40: Testimony of Felons</u>

2          You have heard the testimony of witnesses who were previously convicted of crimes,

3    punishable by more than one year in jail. This prior conviction was put into evidence for you to

4    consider in evaluating the witness' credibility. You may consider the fact that the witness who

5    testified is a convicted felon in deciding how much of his testimony to accept and what weight, if

6    any, it should be given.

1        <u>Instruction No. 41: Stipulations</u>

2        Some evidence came in by stipulation, or agreement between the parties, that certain facts

3   are true or that if a witness were to be called, he would testify in a certain way.  You must accept

4   as true what the stipulation is: either that the stipulated fact is true, or that the person would have

5   given the stipulated testimony had that person testified.  It is for you to decide how to evaluate that

6   information and how it fits into the rest of the case.

63

1 <u>Instruction No. 42: Preparation of Witnesses</u>

2      You have heard evidence that witnesses may have discussed the facts of the case with their

3 own lawyers or with Government lawyers before they appeared in court.  Although you may

4 consider that fact when you are evaluating a witness's credibility, there is nothing either unusual

5 or inherently improper about a witness meeting with the Government lawyers or his or her own

6 lawyers before testifying so that the witness can be aware of the subjects he or she will be

7 questioned about, focus on those subjects, and have the opportunity to review relevant exhibits

8 before being questioned about them.  Such consultation helps conserve your time and the Court's

9 time.  In fact, it would be unusual for a lawyer to call a witness without such consultations.  The

10 weight you give to the fact or the nature of the witness's preparation for his or her testimony and

11 what inferences you draw from such preparation are within your discretion.

1          <u>Instruction No. 43: Persons Not on Trial</u>

2          Some of the people who may have been mentioned or involved in this case or in the events

3  of the case are not on trial, and you should not speculate why other persons are not on trial.  You

4  should not draw any inference, favorable or unfavorable, toward the Government or the Defendant

5  from the fact that other people are not on trial with this particular Defendant.  Those matters are

6  not your concern and should have no bearing upon your verdict.

1          <u>Instruction No. 44: Uncalled Witnesses</u>

2          There were several people who were named in the testimony during the course of the trial

3    who did not appear at the trial to testify.  You should not draw any inferences or reach any

4    conclusions as to what such a person would have said had they been called as a witness.  Their

5    absence should not affect your judgment in any way.

6          A criminal defendant, you should always remember, does not have a burden or a duty to

7    call any witness or produce any evidence.  It is the Government's burden to prove guilt beyond a

8    reasonable doubt.

66

1          Instruction No. 45: Defendant's Testimony (if Defendant Testifies)

2          Under our Constitution, the defendant in a criminal case never has any duty to testify or

3   come forward with any evidence.  This is because, as I have told you, the burden of proof beyond

4   a reasonable doubt remains on the Government, and the defendant is presumed innocent.  That

5   burden remains with the Government throughout the entire trial and never shifts to the defendant.

6   The defendant is never required to prove that he is innocent.

7          In this case, however, the Defendant chose to testify and was subject to cross-examination

8   like any other witness.  You should examine and evaluate the testimony of the Defendant just as

9   you would the testimony of any witness with an interest in the outcome of the case.

67

1    <u>Instruction No. 46: Defendant's Right Not to Testify (if Defendant Does Not Testify)</u>

2         The Defendant did not testify in this case.  Under our Constitution, a defendant has no

3    obligation to testify or to present any evidence, because it is the Government's burden to prove the

4    defendant guilty beyond a reasonable doubt.  That burden remains with the Government

5    throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove

6    that he is innocent.

7         You may not attach any significance to the fact that the Defendant did not testify.  No

8    adverse inference against him may be drawn by you because he did not take the witness stand.

9    You may not consider this against the Defendant in any way.

68

1    <u>Instruction No. 47: Redaction of Evidentiary Items</u>

2    Some of the exhibits admitted into evidence include redactions of certain information.

3    "Redacted" means that part of the document or recording was taken out.  There is nothing unusual

4    or improper about such redactions.  You are to concern yourself only with the part of the item that

5    has been admitted into evidence.  You should not consider any possible reason why the other part

6    of it was not admitted into evidence.

69

1                    <u>Instruction No. 48: Punishment</u>

2            The applicable penalties that the Defendant faces if convicted is of no concern to you, the

3    members of the jury, and should not, in any sense, enter into or influence your deliberations.  The

4    duty of imposing sentence rests exclusively upon the Court.

5            Your function is to weigh the evidence in the case and to determine whether or not the

6    Government has proved that the Defendant is guilty beyond a reasonable doubt, solely upon the

7    basis of such evidence.

1    <u>Instruction No. 49: Right to Hear Testimony; Election of Foreperson; Communications with the</u>
2    <u>Court; Juror Note-Taking</u>

3    You are about to go into the jury room and begin your deliberations.  The documentary

4    evidence will be sent back with you.  If you want any of the testimony, that can be arranged.

5    But please remember that it is not always easy to locate what you might want, so be as specific

6    as you possibly can in requesting portions of the testimony that you might want.

7    Your first task as a jury will be to choose your foreperson.  The foreperson has no greater

8    voice or authority than any other juror, but is the person who will communicate with the Court

9    through written note when questions arise and to indicate when you have reached your verdict.

10   Your requests for testimony—in fact, any communications with the Court— should be

11   made to me in writing, signed by your foreperson, and given to one of the Marshals.  I will

12   respond to any questions or requests you have as promptly as possible, either in writing or by

13   having you return to the courtroom so I can speak with you in person.  In any communication,

14   please do not tell me or anyone else how the jury stands on the issue of the jury's verdict until

15   after a unanimous verdict is reached.

16   For those of you who took notes during the course of the trial, you should not show your

17   notes to or discuss your notes with any other juror during your deliberations.  Any notes you

18   have taken are to assist you and you alone.  The fact that a particular juror has taken notes

19   entitles that juror's views to no greater weight than those of any other juror.

71

1          Finally, your notes are not to substitute for your recollection of the evidence in this case.

2     As noted, if you have any doubt as to any testimony, you may request that the official trial

3     transcript that has been made of these proceedings be read or otherwise provided to you.

1                              **CONCLUDING REMARKS**

2           The most important part of this case, members of the jury, is the part that you as jurors are

3    now about to play as you deliberate on the issues of fact.  It is for you, and you alone, to weigh

4    the evidence in this case and determine whether the Government has proved beyond a reasonable

5    doubt each of the essential elements of the crime with which Mr. Berry is charged.  If the

6    Government has succeeded, your verdict should be guilty as to that charge; if it has failed, your

7    verdict should be not guilty as to that charge.

8           You must base your verdict solely on the evidence or lack of evidence and these

9    instructions as to the law, and you are obliged under your oath as jurors to follow the law as I

10   have instructed you, whether you agree or disagree with the particular law in question.

11          Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided

12   solely by the evidence presented during the trial and the law as I gave it to you, without regard to

13   the consequences of your decision.  You have been chosen to try the issues of fact and reach a

14   verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your

15   clear thinking, there is a risk that you will not arrive at a just verdict.

16          As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

17   opportunity to express your own views.  Every juror should be heard.  No one juror should hold

18   center stage in the jury room and no one juror should control or monopolize the deliberations.  If,

19   after listening to your fellow jurors and if, after stating your own view, you become convinced

20   that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

21   On the other hand, do not surrender your honest convictions and beliefs solely because of the

1    opinions of your fellow jurors or because you are outnumbered.  Your final vote must reflect

2    your conscientious belief as to how the issues should be decided.

3            Thus, the verdict must represent the considered judgment of each juror.  In order to return

4    a verdict, it is necessary that each juror agree to it.  Your verdict must be unanimous.

5            If at any time you are divided, do not report how the vote stands, and if you have reached

6    a verdict, do not report what it is until you are asked in open court.

7            Finally, I say this not because I think it is necessary, but because it is the custom in this

8    courthouse to say this:  You should treat each other with courtesy and respect during your

9    deliberations.

10           In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your

11   fellow jurors, and if you apply your own common sense, you will deliberate fairly.

12           Members of the jury, I ask your patience for a few minutes longer.  It is necessary for me

13   to spend a few moments with counsel and the reporter at the side bar.  I will ask you to remain

14   patiently in the jury box, without speaking to each other, and we will return in just a moment to

15   submit the case to you.  Thank you.

DRAFT SENT TO COUNSEL (redline) – September 25, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

RALPH BERRY,

Defendant.

20-cr-84 (AJN)

**[DRAFT] JURY INSTRUCTIONS**

# TABLE OF CONTENTS

1    INTRODUCTORY INSTRUCTIONS ....................................................................... 4
2        Instruction No. 1: Role of the Court ................................................................ 4
3        Instruction No. 2: Role of the Jury ................................................................. 5
4        Instruction No. 3: Contact with Others/Social Media ................................... 6
5        Instruction No. 4: Statements of Counsel and Court Not Evidence;  Jury's Recollection
6            Controls ..................................................................................................... 7
7        Instruction No. 5: Improper Considerations .................................................. 9
8        Instruction No. 6: All Parties Are Equal Before the Law ............................ 10
9        Instruction No. 7: Implicit Bias .................................................................... 11
10       Instruction No. 8: Presumption of Innocence and Burden of Proof............. 12
11       Instruction No. 9: Reasonable Doubt ........................................................... 13
12       Instruction No. 10: The Indictment .............................................................. 14
13   CHARGE ................................................................................................................ 15
14       Instruction No. 11: Summary of the Indictment .......................................... 15
15       Instruction No. 12: Aiding and Abetting Liability ....................................... 16
16       Instruction No. 13: Predicate Narcotics Conspiracy ................................... 20̶1̶9̶
17       Instruction No. 14: Predicate Narcotics Conspiracy – First Element: Existence of the
18           Conspiracy ............................................................................................... 22̶2̶1̶
19       Instruction No. 15: Predicate Narcotics Conspiracy – Second Element: Membership in the
20           Conspiracy ............................................................................................... 26̶2̶5̶
21       Instruction No. 16: Count One (Murder Using a Firearm)........................... 28̶2̶7̶
22       Instruction No. 17: Count One (Murder Using a Firearm) – First Element: Use, Carry or
23           Possess ..................................................................................................... 30̶2̶9̶
24       Instruction No. 18: Count One (Murder Using a Firearm) – Second Element: During and in
25           Relation to a Drug Trafficking Crime...................................................... 31̶3̶0̶
26       Instruction No. 19: Count One (Murder Using a Firearm) – Third Element: Causing Death
27           ................................................................................................................. 32̶3̶1̶
28       Instruction No. 20: Count One (Murder Using a Firearm) – Fourth Element: Death Qualifies as
29           Federal Murder......................................................................................... 33̶3̶2̶
30       Instruction No. 21: Count One (Murder Using a Firearm) – Fifth Element: Knowingly ..... 35̶3̶4̶
31       Instruction No. 22: Count Two (Killing While Engaged in Narcotics Conspiracy) ............. 36̶3̶5̶
32       Instruction No. 23: Count Two (Killing While Engaged in Narcotics Conspiracy) – First and
33           Second Elements: Narcotics Conspiracy and Drug Weight ...................... 37̶3̶6̶
34       Instruction No. 24: Count Two (Killing While Engaged in Narcotics Conspiracy) – Third and
35           Fourth Elements: Counsel, Command, Induce, Procure, or Cause an Intentional Killing
36           ................................................................................................................. 38̶3̶7̶
37       Instruction No. 25: Count Three (Murder in Aid of Racketeering) ..................................... 41̶4̶0̶
38       Instruction No. 26: Count Three (Murder in Aid of Racketeering) – First Element: Existence of
39           an Enterprise ............................................................................................ 42̶4̶1̶

1    Instruction No. 27: Count Three (Murder in Aid of Racketeering) – Second Element:
2        Racketeering Activity ......................................................................................... 4443
3    Instruction No. 28: Count Three (Murder in Aid of Racketeering) – Third Element: Interstate
4        Commerce .......................................................................................................... 4746
5    Instruction No. 29: Count Three (Murder in Aid of Racketeering) – Fourth Element: Murder in
6        Violation of New York Law ................................................................................ 4847
7    Instruction No. 30: Count Three (Murder in Aid of Racketeering) – Fifth Element: Purpose of
8        Maintaining or Increasing Position in Enterprise ............................................ 4948
9    OTHER INSTRUCTIONS ............................................................................................ 5049
10   Instruction No. 31: Venue ............................................................................................ 5049
11   Instruction No. 32: Theory of the Defense .................................................................. 5150
12   GENERAL INSTRUCTIONS ....................................................................................... 5251
13   Instruction No. 33: Direct and Circumstantial Evidence ............................................ 5251
14   Instruction No. 34: Inferences ..................................................................................... 5453
15   Instruction No. 35: Number of Witnesses and Uncontradicted Testimony (If Applicable).. 5655
16   Instruction No. 36: Credibility of Witnesses .............................................................. 5756
17   Instruction No. 37: Credibility of Witnesses: Impeachment by Prior Inconsistent Statement (If
18       Applicable) ......................................................................................................... 5958
19   Instruction No. 38: Charts and Summaries – Not Admitted As Evidence (If Applicable) ... 6059
20   Instruction No. 39: Charts and Summaries – Admitted as Evidence (If Applicable) ........... 6160
21   Instruction No. 40: Law Enforcement Witnesses ........................................................ 6261
22   Instruction No. 41: Expert Witnesses .......................................................................... 6362
23   Instruction No. 42: Accomplice/Cooperating Witness Testimony .............................. 6463
24   Instruction No. 43: Testimony of Felons (If Applicable) ............................................ 6766
25   Instruction No. 44: Testimony of Perjurer (If Applicable) .......................................... 6867
26   Instruction No. 45: Stipulations .................................................................................. 6968
27   Instruction No. 46: Preparation of Witnesses (If Applicable) ..................................... 7069
28   Instruction No. 47: Persons Not on Trial .................................................................... 7170
29   Instruction No. 48: Uncalled Witnesses—Equally Available ..................................... 7271
30   Instruction No. 49: Defendant's Testimony (if Defendant Testifies) .......................... 7372
31   Instruction No. 50: Defendant's Right Not to Testify (if Defendant Does Not Testify) ...... 7473
32   Instruction No. 51: Particular Investigative Techniques Not Required (If Applicable) ....... 7574
33   Instruction No. 52: Redaction of Evidentiary Items (If Applicable).................................. 7675
34   Instruction No. 53: Punishment ................................................................................... 7776
35   Instruction No. 54: Right to Hear Testimony; Election of Foreperson; Communications with
36       the Court; Juror Note-Taking ............................................................................. 7877
37   CONCLUDING REMARKS.......................................................................................... 8079

38

3

| | |
|---|---|
| 1 | **INTRODUCTORY INSTRUCTIONS** |
| 2 | <u>Instruction No. 1: Role of the Court</u> |
| 3 | You have now heard all of the evidence in the case.  It is my duty at this point to instruct |
| 4 | you as to the law.  It is your duty to accept these instructions of law and apply them to the facts |
| 5 | as you determine them. |
| 6 | On these legal matters, you must take the law as I give it to you.  Regardless of any |
| 7 | opinion that you may have as to what the law may be—or ought to be—it would violate your |
| 8 | sworn duty to base a verdict upon any other view of the law than that which I give you.  If an |
| 9 | attorney or anyone else at trial has stated a legal principle different from any that I state to you in |
| 10 | my instructions, it is my instructions that you must follow. |
| 11 | You should not single out any instruction as alone stating the law, but you should |
| 12 | consider my instructions as a whole when you retire to deliberate in the jury room.  You may |
| 13 | take a copy of these instructions with you into the jury room. |

4

1          Instruction No. 2: Role of the Jury

2          Your role is to decide the fact issues that are in the case.  You are the sole and exclusive

3    judges of the facts.  You pass upon the weight of the evidence or lack of evidence; you determine

4    the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and

5    you draw whatever reasonable inferences you decide to draw solely based on the evidence and

6    from the facts as you have determined them.  You must determine the facts based solely on the

7    evidence received in this trial.

8          In determining the facts, you must rely upon your own recollections of the evidence.

9    What the lawyers have said—for instance, in opening statements, in closing arguments, in

10   objections, or in questions—is not evidence.  You should bear in mind particularly that questions

11   put to witnesses, although they can provide the context to answers, are not themselves evidence.

12   It is only the answers that are evidence.

13         I remind you also that nothing I have said during the trial or will say during these

14   instructions is evidence.  Similarly, the rulings I have made during the trial are not any indication

15   of my views of what your decision should be.

16         The evidence before you consists of the answers given by witnesses, the exhibits, and the

17   stipulations that were received in evidence.  If I have sustained an objection to a question or told

18   you to disregard testimony, the answers given by a witness are no longer part of the evidence in

19   this case and may not be considered by you.

1          <u>Instruction No. 3: Contact with Others/Social Media</u>

2          During your deliberations, you must not communicate with or provide any information to

3   anyone by any means about this case.  You may not use any electronic devices or media, such as

4   a telephone, cell phone, smart phone, iPhone, Blackberry or computer; the Internet, or any

5   internet service, or any text or instant messaging service; or any internet chat room, blog, or

6   website, such as Facebook, My Space, LinkedIn, YouTube, Twitter, Instagram, or Snapchat, to

7   communicate to anyone any information about this case or to conduct any research about this

8   case until I accept your verdict.  In other words, you cannot talk to anyone on the phone or in

9   person, correspond with anyone, or electronically communicate with anyone about this case.

10   You can only discuss the case in the jury room with your fellow jurors during deliberations.

11          Along the same lines, you should not try to access any information about the case or do

12   research on any issue that arose during the trial from any outside source, including dictionaries,

13   reference books, or anything on the Internet.  In our judicial system, it is important that you are

14   not influenced by anything or anyone outside of this courtroom.  Your sworn duty is to decide

15   this case solely and wholly on the evidence that was presented to you in this courtroom.

6

1                <u>Instruction No. 4: Statements of Counsel and Court Not Evidence;</u>
2                                    <u>Jury's Recollection Controls</u>

3        As I have said, you must determine the facts by relying upon your own recollection of the

4    evidence.  This case is not to be decided on the rhetoric of either the attorneys for the

5    Government or the attorneys for the Defendant.  The lawyers' arguments are intended to

6    convince you to draw certain conclusions from the evidence or lack of evidence.  Those

7    arguments are important.  You should weigh and evaluate them carefully.  But you must not

8    confuse them with the evidence.  If your recollection of the evidence differs from the statements

9    of the lawyers, follow your recollection.

10        You should draw no inference or conclusion for or against any party by reason of lawyers

11    making objections or my rulings on such objections.  Counsel have not only the right but the

12    duty to make legal objections that they think are appropriate.  You should not be swayed against

13    the Government or the Defendant simply because counsel for either side has chosen to make an

14    objection.  Similarly, statements made by counsel when arguing the admissibility of evidence are

15    not to be considered as evidence.

16        If I comment on the evidence during my instructions, do not accept my statements in

17    place of your recollection.  Again, it is your recollection that governs.

18        Do not concern yourself with what was said at side bar conferences or during my

19    discussions with counsel.  Those discussions related to rulings of law, which are my duty, and

20    not to matters of fact, which are your duty to determine.

7

1        At times I may have admonished a witness or directed a witness to be responsive to

2   questions, to keep his or her voice up, or to repeat an answer.  I have also instructed the lawyers

3   at times to keep their voices up and speak into the microphones.  My instructions were intended

4   only to clarify the presentation of evidence.  You should draw no inference or conclusion of any

5   kind, favorable or unfavorable, with respect to any witness or party in the case, by reason of any

6   comment, question, or instruction of mine.  Nor should you infer that I have any views as to the

7   credibility of any witness, as to the weight of the evidence, or as to how you should decide any

8   issue that is before you.  That is entirely your role.

8

1    <u>Instruction No. 5: Improper Considerations</u>

2         Your verdict must be based solely upon the evidence developed at trial or the lack of

3    evidence.  It would be improper for you to consider any personal feelings you have about Mr.

4    Berry's race, ethnicity, religion, national origin, sex, age, or other similar factor.  Similarly, it

5    would be improper for you to consider any personal feelings you may have about the race,

6    ethnicity, religion, national origin, sex, age, or any other similar factor of any other witness or

7    anyone else involved in this case.  It would be equally improper for you to allow any feelings

8    you might have about the nature of the crime charged to interfere with your decision-making

9    process.  Mr. Berry is entitled to a trial free from prejudice and our judicial system cannot work

10   unless you reach your verdict through a fair and impartial consideration of the evidence.

9

1                <u>Instruction No. 6: All Parties Are Equal Before the Law</u>

2             You are to perform the duty of finding the facts without bias or prejudice as to any party.

3 You are to perform your final duty in an attitude of complete fairness and impartiality.

4             The fact that the prosecution is brought in the name of the United States of America

5 entitles the Government to no greater consideration than that given to any other party to this

6 litigation.  By the same token, the Government is entitled to no less consideration.  All parties,

7 whether Government or individuals, stand as equals at the bar of justice.

10

1                          <u>Instruction No. 7: Implicit Bias</u>

2              It is important that you discharge your duties without discrimination, meaning that you

3      should not be influenced by any person's race, color, religious beliefs, national ancestry, sexual

4      orientation, gender identity, gender, or economic circumstances as you exercise your judgment

5      throughout the trial.  Also, do not allow yourself to be influenced by personal likes or dislikes,

6      sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.  Unconscious

7      biases are stereotypes, attitudes, or preferences that people may consciously reject but may be

8      expressed without conscious awareness, control, or intention.  Like conscious bias, unconscious

9      bias can affect how we evaluate information and make decisions.

11

1          <u>Instruction No. 8: Presumption of Innocence and Burden of Proof</u>

2          Mr. Berry pleaded not guilty to the charges against him.  As a result of a plea of not

3    guilty, the burden is on the Government to prove Mr. Berry's guilt beyond a reasonable doubt as

4    to each charge.  This burden never shifts to Mr. Berry for the simple reason that the law never

5    imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any

6    witness, or locating or producing any evidence.

7          Even if Mr. Berry has presented evidence in his defense, it is not his burden to prove

8    himself innocent.  It is always the Government's burden to prove each of the elements of the

9    crimes charged beyond a reasonable doubt.

10         Furthermore, the law presumes Mr. Berry to be innocent of the charges against him.  In

11   other words, Mr. Berry starts with a clean slate.  The presumption of innocence stays with Mr.

12   Berry all throughout the trial and remains as you go into the jury room to begin your

13   deliberations.  The presumption remains unless and until you are convinced that the Government

14   has proven Mr. Berry's guilt beyond a reasonable doubt as to each charge.  Indeed, the

15   presumption of innocence alone requires you to acquit the Defendant of a charge unless you are

16   unanimously convinced that the Government has proven that he is guilty of that charge beyond a

17   reasonable doubt.

12

1          <u>Instruction No. 9: Reasonable Doubt</u>

2          I have said that in order to convict Mr. Berry on any of the charges in the Indictment, the

3     Government is required to prove that charge beyond a reasonable doubt.  The question that

4     naturally arises is, "What is a reasonable doubt?"  The words almost define themselves.  It is a

5     doubt based in reason and arising out of the evidence in the case, or the lack of evidence.  It is a

6     doubt that a reasonable person has after carefully weighing all of the evidence in the case.

7          Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience,

8     and your common sense.  If, after a fair and impartial consideration of all the evidence, you can

9     candidly and honestly say that you do have an abiding belief of Mr. Berry's guilt as to any crime

10    charged in this case, such a belief as a prudent person would be willing to act upon in important

11    matters in the personal affairs of his or her own life, then you have no reasonable doubt, and

12    under such circumstances it is your duty to convict Mr. Berry of the particular crime in question.

13         On the other hand, if, after a fair and impartial consideration of all the evidence, you can

14    candidly and honestly say that you are not satisfied with the guilt of Mr. Berry as to any charge,

15    that you do not have an abiding belief of his guilt as to that charge—in other words, if you have

16    such a doubt as would reasonably cause a prudent person to hesitate in acting in matters of

17    importance in his or her own affairs—then you have a reasonable doubt, and in that circumstance

18    it is your duty to acquit Mr. Berry of that charge.

13

1 <u>Instruction No. 10: The Indictment</u>

2   The Defendant, Mr. Berry, has been formally charged in what is called an "Indictment."

3 As I instructed you at the outset of this trial, the Indictment is simply a charge or accusation.  It is

4 not evidence.  Mr. Berry begins trial with an absolutely clean slate and without any evidence

5 against him.  You must give no weight to the fact that an Indictment has been returned against

6 Mr. Berry.  What matters is the evidence that has been presented at the trial or the lack of

7 evidence.

8   I will not read the entire Indictment to you at this time.  Rather, I will summarize the

9 charges in the Indictment and then explain in detail the elements of each offense.

14

# CHARGE

1

## Instruction No. 11: Summary of the Indictment

2

3    As I just instructed you, the Indictment is just a charge or accusation.  It is not evidence.

4    The Indictment contains three counts, or charges, each relating to the same alleged incident

5    on or about June 21, 2000.

6    Count One charges that the Defendant willfully and knowingly used and carried a gun

7    during or in relation to a drug trafficking crime, or aided and abetted another person to do the same,

8    resulting in the murder of Caprice Jones.

9    Count Two charges that, while engaged in a conspiracy to distribute 280 grams or more of

10   crack cocaine, the Defendant caused another person to shoot and kill Caprice Jones, or aided and

11   abetted another person to do the same.

12   Count Three charges that Defendant intentionally and knowingly caused the murder of

13   Caprice Jones, or aided and abetted another person to do the same, for the purpose of maintaining

14   or increasing his position in a racketeering enterprise.

15   Each count constitutes a separate offense or crime.  You must consider each count of the

16   Indictment separately, and you must return a separate, unanimous verdict as to each count.  You

17   may only find the Defendant guilty of a particular count if the Government has proven each

18   element of the offense charged with respect to that count beyond a reasonable doubt.

15

1           <u>Instruction No. 12: Aiding and Abetting Liability</u>

2           Before I move on to the counts of the Indictment, I want to instruct you on the concept of

3   aiding and abetting, including willfully causing.   The Defendant is charged with committing

4   certain criminal acts but is also charged with aiding and abetting or willfully causing the

5   commission of those acts by another person.   As to each of those crimes, the Defendant can be

6   convicted either if he committed the crime himself or if he aided and abetted or willfully caused

7   the commission of the crime by one or more people.   It is not necessary for the Government to

8   show that the Defendant himself physically committed a crime in order for you to find him guilty.

9   You may, under certain circumstances, find him guilty of the crime as an aider and abettor or as

10  someone who willfully caused someone else to commit the crime.

11          Aiding and abetting liability is its own theory of criminal liability.   In effect, it is a theory

12  of liability that permits a person to be convicted of a specified crime if the person, while not himself

13  committing the crime, assisted another person or persons in committing the crime or willfully

14  caused another person to commit the crime.

15          Under the federal aiding and abetting statute and its New York State analogue, whoever

16  "aids, abets, counsels, commands, induces or procures" the commission of an offense is punishable

17  as a principal.   You should give these words their ordinary meaning.   A person aids or abets a

18  crime if he knowingly does some act for the purpose of aiding or encouraging the commission of

19  that crime, with the intention of causing the crime charged to be committed.   To "counsel" means

20  to give advice or recommend.   To "induce" means to lead or move by persuasion or influence as

16

1    to some action or state of mind.  To "procure" means to bring about by unscrupulous or indirect

2    means.  To "cause" means to bring something about, to effect something.

3        A person who aids and abets another to commit an offense is just as guilty of that offense

4    as if he had committed it himself.  Therefore, if you find that the Government has proven beyond

5    a reasonable doubt that another person actually committed a crime, and that the Defendant aided

6    and abetted that person in the commission of the offense, then you may find the Defendant guilty

7    of that crime.

8        As you can see, the first requirement is that the crime charged was actually committed by

9    someone.  Obviously, no one can be convicted of aiding and abetting a crime if no crime was

10   committed.  But if you do find that a crime was committed, then you must consider whether the

11   Defendant aided or abetted the commission of the crime.

12       In order to aid and abet another to commit a crime, it is necessary that the Defendant

13   willfully and knowingly associated himself in some way with the crime and that he willfully and

14   knowingly sought by some act to help make the crime succeed.

15       The mere presence of a person where a crime is being committed, even coupled with

16   knowledge by that person that a crime is being committed, or the mere acquiescence by a person

17   in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding

18   and abetting.  An aider and abettor must have some interest in the criminal venture and must take

19   some action to assist or encourage the commission of the crime.

20       To determine whether the Defendant aided and abetted the commission of the crime with

21   which he is charged, ask yourself these questions:

17

1          1.   Did he participate in the crime charged as something he wished to bring about?

2          2.   Did he associate himself with the criminal venture knowingly and willfully?

3          3.   Did he seek by his actions to make the criminal venture succeed?

4          If, but only if, the Government proves beyond a reasonable doubt that the answer to these

5   three questions is "yes," then the Defendant is an aider and abettor, and therefore guilty of the

6   charged offense.

7          Similarly, a defendant can be found guilty even if he did not himself commit the crime, if

8   he willfully caused another person to commit the crime.   In considering whether the Defendant

9   willfully caused another person to commit a crime, ask yourself these questions:

10         1.   Did the Defendant intend for someone to commit the crime?

11         2.   Did the Defendant intentionally instruct another person to commit the criminal act?

12         If you are persuaded beyond a reasonable doubt that the answer to both of these questions

13   is "yes," then the Defendant is guilty of the crime charged just as if he himself had actually

14   committed it. What does the term "willfully caused" mean?  It means that it is not necessary for

15   the Defendant himself to have physically committed the crime.   To determine whether the

16   Defendant "willfully caused" the commission of a crime, ask yourself these questions:

17         1.  First, did the Defendant intentionally take action that caused someone else to

18             commit an act that would have been a crime if the Defendant himself had

19             committed that act?

20         2.  Second, did the Defendant intend that the crime would actually be committed by

21             someone else?

18

1   If the answer to both of these questions is "yes," then the Defendant is guilty just as if the

2   Defendant himself had physically committed the crime.

1          <u>Instruction No. 13: Predicate Narcotics Conspiracy</u>

2          As I will instruct you in a moment, Counts One and Two of the Indictment both involve

3   elements that the Defendant engaged in certain conduct in the course of, or in furtherance of, a

4   conspiracy to distribute and possess with intent to distribute crack cocaine. Count Three similarly

5   has an element that involves the question of whether the Defendant was engaged in a narcotics

6   conspiracy.   Therefore, before I provide you with the specific legal instructions regarding the

7   elements of Counts One, Two, and Three, I am going to first instruct you regarding the elements

8   of a narcotics conspiracy, because they will be relevant to each of the three Counts.

9          A conspiracy is a kind of criminal partnership: a combination or agreement of two or more

10  persons to join together to accomplish some unlawful purpose.  Federal law makes it a separate

11  and independent crime for an individual to conspire with others to violate the narcotics laws of the

12  United States.  The essence of the crime of conspiracy is an agreement or understanding to violate

13  other laws.  It is separate and distinct from the crime that is the objective of the conspiracy, and it

14  is separate and distinct from the actual violation of any specific federal laws, which the law refers

15  to as substantive crimes.

16          Thus, in considering a conspiracy charge, you do not have to find that the actual substantive

17  crime that is the object of the conspiracy was committed—here, an actual distribution or possession

18  with intent to distribute crack cocaine.  In other words, you may find the Defendant guilty of

19  agreeing to distribute or agreeing to possess with intent to distribute narcotics even if the

20  conspiracy was not successful and no narcotics were actually possessed or distributed.  It is the

20

1  agreement itself—the agreement with others to commit the crime—along with the other elements

2  of conspiracy that the law forbids and defines as a crime.

3          To sustain its burden of proof with respect to proving a narcotics conspiracy, the

4  Government must prove beyond a reasonable doubt the following two elements:

5          First, that a conspiracy existed, that is, an agreement or understanding between two or more

6  persons existed, in or about 2000, to knowingly and intentionally distribute, or possess with intent

7  to distribute, a controlled substance, here, crack cocaine.  Therefore, the first question for you is:

8  Was there such an agreement?

9          Second, the Government must prove beyond a reasonable doubt that the Defendant

10  intentionally and knowingly became a member of that conspiracy; that is, that he knowingly

11  associated himself with the conspiracy, and participated in the conspiracy to distribute or possess

12  with the intent to distribute crack cocaine.

13

21

1    <u>Instruction No. 14: Predicate Narcotics Conspiracy – First Element: Existence of the Conspiracy</u>

2         What is a conspiracy?  A conspiracy is an agreement or an understanding, between two or

3    more persons, to accomplish a criminal or unlawful purpose.  The conspiracy alleged here is an

4    agreement to distribute crack cocaine or to possess crack cocaine with the intent to distribute it.

5         Now, to show a conspiracy, the Government is not required to show that two or more

6    people sat around a table and entered into a solemn pact, orally or in writing, stating that they had

7    formed a conspiracy to violate the law and setting forth details of the plans and means by which

8    the unlawful project is to be carried out or the part to be played by each conspirator.  Common

9    sense will tell you that when people enter into a criminal conspiracy, much may be left to the

10    unexpressed understanding.  It is rare that a conspiracy can be proven by direct evidence of an

11    explicit agreement.  The agreement may be implicit.  It is sufficient if two or more persons in some

12    way or manner, impliedly or tacitly, come to a common understanding to violate the law.

13         In order for the Government to satisfy this element, you need not find that the alleged

14    members of the conspiracy met together and entered into any express or formal agreement.

15    Similarly, you need not find that the alleged conspirators stated, in words or in writing, what the

16    scheme was, its object or purpose, every precise detail of the scheme, or the means by which its

17    object or purpose was to be accomplished.  What the Government must prove is that there was a

18    mutual understanding, either spoken or unspoken, between two or more people to cooperate with

19    each other to accomplish an unlawful act.

20         In determining whether there has been an unlawful agreement as alleged here, you may

21    consider the actions of all the alleged co-conspirators that were taken to carry out the apparent

22

1    criminal purpose, if any.  The old adage, "actions speak louder than words," applies here.  Often,

2    the only evidence that is available with respect to the existence of a conspiracy is that of

3    disconnected acts on the part of the alleged individual co-conspirators.  When taken all together

4    and considered as a whole, however, that conduct may warrant the inference that a conspiracy

5    existed just as conclusively as more direct proof, such as evidence of an express agreement.

6         In considering whether or not the Government has proven beyond a reasonable doubt that

7    the conspiracy existed, you should consider all the evidence that has been admitted with respect to

8    the conduct and statements of each alleged co-conspirator, and any inferences that may reasonably

9    be drawn from that conduct and those statements.  It is sufficient to establish the existence of the

10   conspiracy, as I have already said, if, from the proof of all the relevant facts and circumstances,

11   you find beyond a reasonable doubt that the minds of at least two alleged co-conspirators met in

12   an understanding way, to accomplish the objective of the conspiracy charged in the Indictment.

13                            Object of Conspiracy

14        The object of a conspiracy is the illegal goal the co-conspirators agree or hope to achieve.

15   The object of the conspiracy alleged here is to distribute or possess with intent to distribute crack

16   cocaine.

17        Let me note that the Government need prove only that the Defendant conspired to distribute

18   a controlled substance or that he conspired to possess the controlled substance with the intent to

19   distribute it.  The Government need not prove both.  You must be unanimous, however, as to which

20   act was proven beyond a reasonable doubt to have been the object of the conspiracy.

23

"Distribution"

2       The word "distribution" means the actual, constructive or attempted transfer of the drug.

3    To distribute simply means to deliver, to pass over, to hand over something to another person, or

4    to cause it to be delivered, passed on or handed over to another.  Distribution does not require a

5    sale, but includes sales.

"Possession With Intent To Distribute"

7       What does "possession with intent to distribute" mean?  I will first discuss the concept of

8    "possession," and then discuss the concept of "intent to distribute."

*Possession*

10       The legal concept of possession may differ from the everyday usage of the term, so let me

11    explain it in some detail.  Actual possession is what most of us think of as possession—that is,

12    having physical custody or control of an object, as I possess this pen.  However, a person need not

13    have actual, physical possession—that is, physical custody of an object—in order to be in legal

14    possession of it.  If a person has the ability to exercise substantial control over an object, even if

15    he or she does not have the object in his physical custody, and that person has the intent to exercise

16    such control, then the person is in possession of that object.   This is called "constructive

17    possession."

18       Control over an object may be demonstrated by the existence of a working relationship

19    between one person having the power or ability to control the item and another person who has

20    actual physical custody.  The person having control "possesses" the narcotics, because he or she

24

1   has an effective working relationship with the person who has actual physical custody of the

2   narcotics, and because he or she can direct the movement or transfer or disposition of the narcotics.

3          More than one person can have control over the same narcotics.  The law recognizes that

4   possession may be sole or joint.

5          Finally, possession and ownership are not the same.  A person can possess an object and

6   not be the owner of the object.

7                                          *Intent to Distribute*

8          Possession "with intent to distribute" simply means the possession of a controlled

9   substance with the intent or purpose to "distribute" it to another person or persons, as I have already

10  defined that term.

11         Since no one can read a defendant's mind, the determination as to a defendant's intent is

12  inferred from his behavior.  Basically, the question with regard to the intent aspect of the

13  underlying offense is whether any drugs in a defendant's possession, that is, subject to his control

14  in the manner I have indicated, were for the purpose of distribution to another.

15                                          "Controlled Substance"

16         Finally, I instruct you that, as a matter of law, crack cocaine is a "controlled substance."

25

1    <u>Instruction No. 15: Predicate Narcotics Conspiracy – Second Element: Membership in the</u>
2    <u>Conspiracy</u>

3          For the second element, the Government must prove that the Defendant knowingly,

4    intentionally and willfully became a participant in, or a member of, the conspiracy. "Knowingly"

5    means to act consciously and voluntarily, rather than by mistake or accident or mere

6    inadvertence. "Intentionally" is considered synonymous with "willfully." The word "willfully"

7    means that the act was committed voluntarily and purposely, with the intent to do something the

8    law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must

9    have acted with the intent to do something the law forbids before you can find that the person

10   acted "willfully," the person need not be aware of the specific law or rule that his conduct may be

11   violating.

12         To become a member of a conspiracy, a defendant need not have known the identities of

13   each member, nor their number, nor all of their activities. A defendant need not have been fully

14   informed of all the details, or the scope, of a conspiracy. A defendant need not have joined in all

15   of a conspiracy's unlawful objectives. Proof that the defendant had a financial interest in the

16   outcome of the scheme is not essential.

17         A conspirator's liability is not measured by the extent or duration of his participation.

18   Each member may perform separate and distinct acts and may perform them at different times.

19   Some conspirators may play major roles, while others may play minor roles. An equal role is not

20   what the law requires. In fact, even a single act may be sufficient to draw a defendant within the

21   circle of a conspiracy.

26

1        I want to caution you, however, that the Defendant's mere presence at the scene of an

2    alleged crime or at a meeting or some other gathering does not, by itself, make him a member of

3    a conspiracy. Similarly, mere association with one or more members of a conspiracy does not

4    automatically make the defendant a member. A person may know or be friendly or communicate

5    in any manner with a criminal without being a criminal himself. Mere similarity of conduct or

6    the fact that persons may have assembled together and discussed common aims and interests

7    does not necessarily establish membership in the conspiracy. Furthermore, a defendant's mere

8    knowledge of or acquiescence in an unlawful plan, without participation, is not sufficient. The

9    fact that a defendant, without knowledge, merely happens to act in a way that furthers the

10    purposes or objectives of the conspiracy does not automatically make the defendant a member.

11       More is required under the law. The Defendant must have intentionally engaged, advised

12    or assisted in the conspiracy with knowledge of its unlawful purpose and with the specific

13    intention of furthering one or more of its objectives. He thereby becomes a knowing and willing

14    participant in the unlawful agreement – that is to say, a conspirator.

27

1    <u>Instruction No. 16: Count One (Murder Using a Firearm)</u>

2          Having defined aiding and abetting and the elements of a narcotics conspiracy, I will now

3    instruct you on the elements of the offense charged in Count One.  Count One charges that the

4    Defendant knowingly used and carried a firearm in relation to a drug trafficking crime—or aided

5    and abetted another person to do the same—resulting in the murder of Caprice Jones, in violation

6    of a federal law referred to as Section 924(j) of Title 18 of the United States Code.

7          That provision makes it a crime for any person, "in the course of a violation of [Section

8    924(c)], [to] cause[] the death of a person through the use of the firearm."  Section 924(c) makes

9    it a crime for any person "during and in relation to any [federal] crime of violence or drug

10   trafficking crime [to] use[] or carr[y] a firearm," or, "in furtherance of any such crime, [to]

11   possess[] a firearm."

12         Accordingly, in order to sustain its burden of proof as to Count One, the Government must

13   prove each of the following five elements beyond a reasonable doubt:

14         <u>First</u>, that on or about June 21, 2000, the Defendant used or carried or possessed a

15   firearm or any combination of those acts, or aided and abetted another to use or carry or

16   possess a firearm or any combination of those acts;

17         <u>Second</u>, that the use or carrying of the firearm was during and in relation to a drug

18   trafficking crime, or possession of the firearm was in furtherance of a drug trafficking crime;

19         <u>Third</u>, that the Defendant caused, or aided and abetted another to cause, the death of

20   another person through the use of a firearm;

28

1          <u>Fourth</u>, that the death of that person qualifies as a murder under federal law, as I will

2    define that term for you in a moment; and

3          <u>Fifth</u>, that the Defendant acted knowingly.

1    <u>Instruction No. 17: Count One (Murder Using a Firearm) – First Element: Use, Carry or Possess</u>

2    The first element the Government must prove beyond a reasonable doubt is that on or about

3    the dates set forth in the Indictment the Defendant used, carried, or possessed a firearm or aided

4    and abetted another to use, carry, or possess a firearm.

5    With respect to "using" a firearm, it is not necessary for the Government to prove that the

6    Defendant, or the person he aided and abetted or intentionally caused to use a firearm, actually

7    fired or attempted to fire the weapon. Brandishing, displaying, or even referring to the weapon so

8    that the others present knew the Defendant had the firearm available if needed would also

9    constitute use of the firearm.

10   With respect to "carrying" a firearm, the Government must prove beyond a reasonable

11   doubt that the Defendant, or the person he aided and abetted or intentionally caused to carry a

12   firearm, had the weapon within his control in such a way that it furthered the commission of the

13   narcotics conspiracy.

14   With respect to "possessing" a firearm, the Government must prove beyond a reasonable

15   doubt that the Defendant, or the person he aided and abetted or intentionally caused to possess a

16   firearm, either had actual physical possession of the firearm or had substantial custody or control

17   over it. Furthermore, the mere possession of the firearm at the scene of a crime or simultaneous

18   with the possession of drugs is not sufficient; such possession must have been in furtherance of

19   the narcotics conspiracy.

1    Instruction No. 18: Count One (Murder Using a Firearm) – Second Element: During and in
2                            Relation to a Drug Trafficking Crime

3        The second element that the Government must prove beyond a reasonable doubt is that the

4    Defendant either used or carried a firearm during and in relation to a drug trafficking crime, or

5    possessed a firearm in furtherance of such a crime.  Possession in furtherance, as I explained

6    earlier, requires that the firearm must have played some part in furthering the crime in order for

7    this element to be satisfied.  The mere possession of the firearm at the scene of a crime or

8    simultaneous with the possession of drugs is not sufficient; such possession, use, or carrying must

9    have been in furtherance of the narcotics conspiracy.

10       The drug trafficking crime that the Defendant allegedly used, carried, or possessed the

11   firearm in furtherance of was a conspiracy to distribute and possess with intent to distribute crack

12   cocaine.  I have already instructed you on law regarding drug conspiracies, and you should apply

13   those instructions here.

31

1    <u>Instruction No. 19: Count One (Murder Using a Firearm) – Third Element: Causing Death</u>

2         The third element the Government must prove beyond a reasonable doubt is that the

3    Defendant's conduct caused the death of Caprice Jones. The Defendant may be found to have

4    caused the death of Caprice Jones if his conduct was a substantial factor in causing that death

5    and Caprice Jones would not have died except for the Defendant's conduct. The Defendant's

6    conduct was a substantial factor if it had such an effect in producing Caprice Jones's death as to

7    lead a reasonable person to regard the Defendant's conduct as a cause of death.

8         The death of Caprice Jones may have had more than one cause. The Government need

9    not prove that the conduct of the Defendant was the only cause of death. You need not find that

10   the Defendant you are considering shot the victim or that he committed the final, fatal act. The

11   Government need prove only that the conduct of the Defendant was a substantial factor in

12   causing the victim's death

1  Instruction No. 20: Count One (Murder Using a Firearm) – Fourth Element: Death Qualifies as
2                                        Federal Murder

3          The fourth element of Count One that the Government must prove beyond a

4  reasonable doubt is that the death of Caprice Jones constituted murder.  The definition of murder

5  for this purpose is "the unlawful killing of a human being, with malice aforethought."  Murder

6  includes "any . . . willful, deliberate, malicious, and premeditated killing."

7          To prove that the death of Caprice Jones qualifies as murder under Section 1111, the

8  Government must establish beyond a reasonable doubt that the Defendant unlawfully killed

9  Jones—or aided and abetted, or caused, the killing of Jones—as charged; and that the Defendant

10  acted with malice aforethought.

11          It is the Government's burden to prove that the Defendant's conduct was a direct cause of

12  Jones's death. This means that the Government must prove that the Defendant inflicted an injury

13  or injuries upon Jones from which he died or aided and abetted, or caused, someone else in doing

14  so.  An act is done unlawfully if it was done without a legally recognized justification or excuse.

15          Malice aforethought is the state of mind that would cause a person to act without regard to

16  the life of another.  To satisfy this element, the Defendant must have acted consciously, with the

17  intent to kill another person.  This element is satisfied if the Government proves beyond a

18  reasonable doubt that the Defendant intended to kill another person.  However, the Government

19  need not prove a subjective intent to kill on the part of the Defendant.  It would be sufficient to

20  satisfy this element if the Government proved reckless and wanton conduct on the part of the

21  Defendant which grossly deviated from a reasonable standard of care such that he or she was aware

33

1    of the serious risk of death.  In order to establish this element, the Government must prove that the

2    Defendant acted willfully, with a bad or evil purpose to break the law.  However, the Government

3    need not prove spite, malevolence, hatred or ill will toward the victim.  The Government also need

4    not prove that the Defendant intended to kill the person who died, as opposed to a different person.

5    Under the law a defendant who planned to murder one person and, in so attempting, killed another

6    is guilty of the murder of the unplanned victim.

1    Instruction No. 21: Count One (Murder Using a Firearm) – Fifth Element: Knowingly

2         The final element the Government must prove beyond a reasonable doubt with respect to

3    Count One is that the Defendant knew that he was using, carrying, or possessing a firearm and that

4    he acted knowingly in doing so.

5         To satisfy this element, you must find that the Defendant had knowledge that what he was

6    carrying or using was a firearm as that term is generally used.  An act is done knowingly if done

7    purposefully and voluntarily as opposed to mistakenly or accidentally.   You will recall that I

8    instructed you earlier that to find that someone acted knowingly requires you to make a finding as

9    to that person's state of mind.  In order for the Government to satisfy this element, it must prove

10   that the Defendant knew what he was doing—for example, that he knew that he was possessing or

11   carrying a firearm in the commission of a crime of violence or a drug trafficking crime.  It is not

12   necessary, however, for the Government to prove that the Defendant knew that he was violating

13   any particular law.

35

1        <u>Instruction No. 22: Count Two (Killing While Engaged in Narcotics Conspiracy)</u>

2        I will now instruct you on the elements of the offense charged in Count Two.  Count Two

3 charges that, while engaged in a conspiracy to distribute 280 grams or more of crack cocaine, the

4 Defendant caused another person to shoot and kill Caprice Jones, in violation of a federal law

5 referred to as Section 848(e) of Title 21 of the United States Code.

6        That provision makes it a crime for any person who is "engaging in [certain narcotics

7 offenses] [to] intentionally kill[] or counsel[], command[], induce[], procure[], or cause[] the

8 intentional killing of an individual and such killing results."

9        Accordingly, in order to sustain its burden of proof as to Count Two, the Government must

10 prove each of the following four elements beyond a reasonable doubt:

11        <u>First</u>, that in or about June 2000, the Defendant was engaged in a conspiracy to

12 distribute crack cocaine;

13        <u>Second</u>, that that narcotics conspiracy involved at least 280 grams or more of crack

14 cocaine;

15        <u>Third</u>, that while engaged in that narcotics conspiracy, the Defendant either

16 intentionally killed<u>, or aided and abetted the killing of,</u> another person or counseled,

17 commanded, induced, procured, or caused the intentional killing of that person by someone

18 else; and

19        <u>Fourth</u>, that the killing actually resulted from the Defendant's actions.

1     <u>Instruction No. 23: Count Two (Killing While Engaged in Narcotics Conspiracy) – First and</u>
2     <u>Second Elements: Narcotics Conspiracy and Drug Weight</u>

3     As I just mentioned, to find the Defendant guilty of Count Two, you must determine first

4 that the Defendant was engaged in a narcotics conspiracy, and second, as to this Count, that the

5 conspiracy involved at least 280 grams of crack cocaine.

6     I have already explained to you the elements of a narcotics conspiracy, and you should

7 apply those instructions here.

8     If, but only if, you conclude that the Government has proved beyond a reasonable doubt

9 that the Defendant is guilty of participating in the conspiracy described above, you must then

10 determine whether they intended the distribution of at least 280 grams of crack cocaine. ~~The~~

11 ~~verdict form that I will submit to you will have a place where you can answer the question of the~~

12 ~~quantity of crack cocaine.~~

13     To calculate this amount, you should include (1) any transactions in furtherance of the

14 conspiracy in which the Defendant personally participated, and (2) any transactions in

15 furtherance of the conspiracy that the Defendant reasonably foresaw even though he did not

16 personally participate in these sales. As I have already instructed you, your findings on quantity,

17 like your other findings, must be unanimous and beyond a reasonable doubt.

37

1    Instruction No. 24: Count Two (Killing While Engaged in Narcotics Conspiracy) – Third and
2    Fourth Elements: Counsel, Command, Induce, Procure, or Cause an Intentional Killing

3        The third and fourth elements the Government must prove beyond a reasonable doubt are

4    that the Defendant, while engaged in that narcotics conspiracy involving at least 280 grams of

5    crack cocaine, intentionally killed the person specified in the Indictment, or aided and abetted

6    another person in doing so, or counseled, commanded, induced, procured, or caused the killing of

7    that person.  I will define those terms for you now.

8                                    "While Engaged In"

9        To show that the killing of the person specified in the Indictment occurred while the

10   Defendant was engaged in a narcotics conspiracy, the Government must prove more than simply

11   a temporal connection between the killing and the narcotics conspiracy.  The Government must

12   show that a substantive connection existed between the alleged conspiracy and the killing, in other

13   words, that the alleged conspiracy was one purpose of the killing.  If you found that the murder

14   was wholly unconnected to the alleged narcotics conspiracy or was simply coincidental to it, then

15   this element will not be satisfied.

16                                    "Intentionally Killed"

17       A person intentionally kills another person when he does so deliberately and purposefully.

18   That is, the defendant's actions must have been his conscious objective rather than the product of

19   a mistake or accident or mere negligence or some other innocent reason.  However, when a

20   defendant plans to murder one person and, in so attempting, kills another person, he is guilty of

21   the murder of the unplanned victim.

38

<u>"Counsel, command, induce, procure and cause"</u>

1

2      To meet its burden of proof, the Government need not prove that the Defendant directly

3 caused the death of Caprice Jones.  The statute takes into consideration that while certain people

4 might have direct involvement in an intentional killing, others can be held responsible even if they

5 play a less direct role.  Thus, this element can be satisfied if you find beyond a reasonable doubt

6 that the Defendant aided, abetted, "counseled, commanded, induced, procured or caused"  that is,

7 aided and abetted  the killing of Caprice Jones.  I have already instructed you on the meaning of

8 these terms within the aiding and abetting instruction, and you should consider that in deciding

9 whether this element is met.

10      You should give these words their ordinary meaning.  To "counsel" means to give advice

11 or recommend. To "command" means to instruct another person.  To "induce" means to lead or

12 move by persuasion or influence as to some action or state of mind.  To "procure" means to bring

13 about by unscrupulous or indirect means.  To "cause" means to bring something about, to effect

14 something.

15 As I have explained, under the principle of aiding and abetting, when one person engages in

16 criminal activity, another person is criminally liable for such criminal activity when, acting with

17 the mental culpability required for the commission of the crime, he solicits, requests, commands,

18 importunes, or intentionally aids such person to engage in the crime charged. In order to aid and

19 abet another to commit a crime, it is necessary that the accused, with the knowledge and intent

20 required to commit the underlying offense, willfully associated himself in some way with the

39

1   criminal venture, willfully participated in it as he would in something he wishes to bring about,

2   and sought by his actions to make it succeed, that is to say, that a

3   defendant willfully sought by some act or omission of his to bring about the knowing and

4   intentional killing of Caprice Jones.

5   Of course, you must not find the Defendant guilty unless you find beyond a reasonable doubt that

6   the knowing and intentional killing of Caprice Jones was committed by some person or persons

7   and that the Defendant aided and abetted the commission of that killing. Mere association with the

8   perpetrators, even with knowledge that a crime is being committed, is not sufficient to establish

9   that a defendant aided and abetted the crime unless you find beyond a reasonable doubt that the

10   Defendant was a knowing participant.

11   To determine whether the Defendant aided or abetted the knowing and intentional killing of

12   Caprice Jones, ask yourself these questions: Did he participate in the killing as something he

13   wished to bring about? Did he seek by his actions to make the killing succeed? If he did, then the

14   Defendant is an aider and abettor and therefore guilty of the crime charged. If, on the other hand,

15   your answers to this series of questions are "no," then the Defendant is not guilty as an aider and

16   abettor.

17       The fourth element that the Government must prove beyond a reasonable doubt is that the

18   death actually resulted from the acts of the Defendant or a person for whose conduct he is

19   criminally responsible.

40

1                 <u>Instruction No. 25: Count Three (Murder in Aid of Racketeering)</u>

2         I will now instruct you on the elements of the offense charged in Count Three.  Count Three

3 charges the Defendant with causing the murder of Caprice Jones, or aiding and abetting another

4 person in doing so, at least in part for the purpose of maintaining or increasing his position in a

5 racketeering enterprise, in violation of a law known as Section 1959(a)(13) of Title 18 of the

6 United States Code.

7         That provision makes it a crime for any person, "for the purpose of gaining entrance to or

8 maintaining or increasing position in an enterprise engaged in racketeering activity, [to] murder[]

9 . . . any individual in violation of the laws of any State []."

10         Accordingly, in order to sustain its burden of proof as to Count Three, the Government

11 must prove each of the following four elements beyond a reasonable doubt:

12         <u>First</u>, that a racketeering enterprise existed;

13         <u>Second</u>, that that enterprise engaged in racketeering activity;

14         <u>Third</u>, that the activities of the enterprise affected interstate commerce;

15         <u>Fourth</u>, that the Defendant committed a murder, or aided and abetted another to commit a

16 murder, in violation of New York state law; and

17         <u>Fifth</u>, that the Defendant's general purpose in doing so was to gain a position, or maintain

18 or increase his existing position, in the enterprise.

41

1  Instruction No. 26: Count Three (Murder in Aid of Racketeering) – First Element: Existence of
2  an Enterprise

3        The first element the Government must prove beyond a reasonable doubt as to

4  Count Three is that the enterprise alleged in the Indictment, the "Berry Crew," existed.  Under the

5  racketeering statute, an enterprise includes a group of individuals who are associated in fact

6  although not a legal entity.  The enterprise does not have to have a particular name, or, for that

7  matter, have any name at all.  The enterprise does not have to be registered or licensed as an

8  enterprise.  It does not have to be a commonly recognized legal entity, such as a corporation, a

9  trade union, a partnership, or the like.

10        An enterprise may be a group of people informally associated together for a common

11  purpose of engaging in a course of conduct.  This group may be organized for a legitimate and

12  lawful purpose or it may be organized for an unlawful purpose.  In addition to having a common

13  purpose, this group of people must have a core of personnel who function as a continuing unit.

14  Furthermore, the enterprise must continue to exist in substantially similar form over a period of

15  time. over the relevant time period.  This does not mean that the membership must remain exactly

16  identical, but the enterprise must have a recognizable core that continues through a substantial

17  period of time. during the relevant time frame.

18        The existence of an enterprise may be proven by what it does.  Thus, you may rely on proof

19  of various racketeering acts committed by the members of the enterprise to establish the existence

20  of the charged enterprise, as I will discuss in a moment. While the same evidence may prove both

42

1    the racketeering activity and the existence of the organization, you should keep in mind that those

2    are distinct concepts.

3         Count Three of the Indictment alleges that an enterprise existed that the Indictment refers

4    to as the "Berry Crew."  This name is simply a form of reference adopted for the purposes of the

5    Indictment to describe the group of individuals who participated in the alleged racketeering

6    activity.  As I just mentioned, an enterprise need not have a formal name or any name at all.

7         The Indictment alleges that the purposes of the enterprise included enriching the members

8    and associates of the enterprise through the distribution and sale of crack cocaine; preserving and

9    protecting the power, territory, and profits of the enterprise through acts of violence and threats of

10   violence; and promoting and enhancing the enterprise and the activities of its members and

11   associates.

12        In summary, if the Government proves beyond a reasonable doubt that there was a group

13   of people characterized by a common purpose or purposes, an ongoing formal or informal

14   organization or structure, and core personnel who functioned as a continuing unit during a

15   substantial period within the time frame charged in the Indictment, then an enterprise existed.

43

1   Instruction No. 27: Count Three (Murder in Aid of Racketeering) – Second Element:
2                              Racketeering Activity

3       The second element that the Government must prove in connection with Count Three is

4   that the enterprise was engaged in racketeering activity.  Racketeering activity simply means

5   certain types of criminal acts, which in this case includes (1) acts involving murder, conspiracy to

6   commit murder, and attempted murder, in violation of New York state law; and (2) acts involving

7   the distribution of narcotics, specifically crack cocaine, as well as conspiracy to commit, and aiding

8   and abetting the commission of, distribution of narcotics, in violation of federal law.  It is for you

9   to determine whether the enterprise engaged in these activities as charged. You should give the

10  words "engaged in" their ordinary, everyday meaning. For an enterprise to be engaged in

11  racketeering activity it is enough to show that the enterprise committed or was planning to commit

12  some racketeering activity within a period of time short enough under all of the circumstances so

13  that it is appropriate to say that the enterprise was engaged in racketeering activity. You do not

14  need to find that the enterprise was engaged in all of the types of racketeering activity I am about

15  to describe, as long as you conclude that the enterprise was engaged in some racketeering activity.

16                              New York Intentional Murder

17      As I just explained, the Indictment alleges that one of the categories of criminal violations

18  in which the enterprise was engaged were acts involving murder, conspiracy to murder, and

19  attempted murder in violation of New York State law.  I will describe those crimes now.

20      In order for you to find that a person committed murder under New York State law, the

21  Government must prove beyond a reasonable doubt that:

44

1              <u>First</u>, that the individual caused the death of the victim, or aided and

2              abetted the same; and

3              <u>Second</u>, that the individual did so with the intent to cause the death

4              of the victim or another person.

5      In this context, to prove that the individual caused or attempted to cause a victim's death,

6    or aided and abetted another who did so, the Government must prove that the victim's death was

7    or would have been a sufficiently direct cause of the individual's conduct.  Under New York law,

8    a person's conduct is a sufficiently direct cause of death when: first, the conduct is an actual

9    contributory cause of the death; and second, the death was a reasonably foreseeable result of the

10   conduct. Let me explain each of those two concepts.

11      An individual's conduct is an actual contributory cause of the death of another when that

12   conduct forged a link in the chain of causes which actually brought about the death—in other

13   words, when the conduct set in motion or continued in motion the events which ultimately resulted

14   in the death.  An obscure or merely probable connection between the conduct and the death will

15   not suffice.  At the same time, if the individual's conduct is an actual contributory cause of the

16   death of another, then it does not matter that such conduct was not the sole cause of the death, or

17   that a pre-existing medical condition also contributed to the death, or that the death did not

18   immediately follow the injury.

1       Second, death is a reasonably foreseeable result of an individual's conduct when the death

2    should have been foreseen as being reasonably related to the actor's conduct.  It is not required

3    that the death was the inevitable result or even the most likely result.

4       I have already instructed you on what it means for someone to act with "intent" to cause

5    the death of another person, and those instructions apply here as well.  In addition, as before, there

6    is no requirement that the person who is murdered or injured during an attempted murder be the

7    same person who was intended to be murdered.  Thus, the intent element is satisfied when a person

8    intends to kill one person, but, instead, kills or injures another person.

9                                        New York Attempt

10      Under New York law, "a person is guilty of an attempt to commit a crime when, with intent

11   to commit a crime, he engages in conduct which tends to effect the commission of such crime."

12   You may only find that a person attempted to commit a crime if you find that he, or those he was

13   aiding and abetting, were on the verge of actually committing it.  Mere preparation is not sufficient.

14   The acts committed by the person, or those he is aiding and abetting, must be those acts that are

15   required to carry the project forward within "dangerous proximity" of the criminal end to be

16   attained.

17                               Distribution of Controlled Substances

18      The other category of racketeering activity that the Government alleges the enterprise was

19   engaged in is the distribution and possession with intent to distribute of crack cocaine.  I have

20   already instructed you on what the Government must prove beyond a reasonable doubt in

21   connection with this narcotics-related activity, and those instructions apply here as well.

46

1    Instruction No. 28: Count Three (Murder in Aid of Racketeering) – Third Element: Interstate
2                                             Commerce

3           The third element the Government must prove beyond a reasonable doubt with respect to

4    Count Three is that the criminal enterprise itself, or the racketeering activities of those associated

5    with it, had some effect on interstate commerce.  This effect on interstate commerce could have

6    occurred in any way and it need only have been minimal.

7           Interstate commerce includes the movement of goods, services, money, and individuals

8    between states.  Congress has determined that all narcotics activity, even purely local narcotics

9    activity, has a substantial effect on interstate commerce.  Thus, if you find that, in the course of

10   the racketeering activities, members of the enterprise trafficked in narcotics, you may find this

11   element satisfied.  It is not necessary for the Government to prove that any particular acts affected

12   interstate commerce or even that acts that the Defendant personally committed affected interstate

13   commerce. It need only prove that some act or acts of the enterprise -- even perfectly legal acts of

14   the enterprise -- had such an effect on interstate commerce. It is not necessary for you to find that

15   the Defendant knew the enterprise was engaged in interstate commerce.

47

1    <u>Instruction No. 29: Count Three (Murder in Aid of Racketeering) – Fourth Element: Murder in</u>
2    <u>Violation of New York Law</u>

3        The fourth element that the Government must prove in connection with Count Three is

4    that the Defendant murdered Caprice Jones, or aided and abetted another in murdering Caprice

5    Jones, in violation of New York law.

6        I have already explained for you the content and elements of the laws that define murder

7    in the State of New York and the concept of aiding and abetting liability.  I instruct you to follow

8    those definitions here to determine if the Government has satisfied its burden as to this element of

9    Count Three.

48

1   Instruction No. 30: Count Three (Murder in Aid of Racketeering) – Fifth Element: Purpose of
2                    Maintaining or Increasing Position in Enterprise

3          The last element the Government must prove with respect to Count Three is that

4   the Defendant acted for the purpose of gaining entrance to, maintaining a position in, or increasing

5   a position in that enterprise.

6          First, the Government must prove beyond a reasonable doubt is that the Defendant had or

7   was seeking a position in the charged racketeering enterprise. To establish this element, it is not

8   sufficient for the Government to demonstrate that the Defendant did business with the enterprise;

9   rather, the Government must prove that the Defendant was actively engaged in promoting the

10  illegal activities of the enterprise.

11         Second, the Government must prove that the Defendant's general purpose in committing

12  the crime in question was to increase his position in or maintain his position in the enterprise.

13  Thus, your focus in this element is on the general purpose of the Defendant.  The Government

14  does not need to prove that maintaining or increasing his position in the enterprise was the

15  Defendant's only motive or even his principal motive, so long as it was a substantial motivating

16  factor in the Defendant's decision to participate in the murder.

**OTHER INSTRUCTIONS**

<u>Instruction No. 31: Venue</u>

In addition to all of the elements I have just described, you must also consider the issue of venue, namely, whether the crime occurred within the Southern District of New York. The Southern District of New York includes Manhattan, the Bronx, and Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan counties.

Venue is established if any part of the charged crime occurred in the Southern District of New York.

On this issue, and this issue alone, the Government does not need to prove venue beyond a reasonable doubt, but only by a preponderance of the evidence. The Government has satisfied its burden on this issue if you conclude that it is more likely than not that venue exists. But I remind you that the Government must prove all other elements of the offense beyond a reasonable doubt.

If you find that the Government has failed to prove venue by a preponderance of the evidence, then you must acquit the Defendant.

1                           Instruction No. 32: Theory of the Defense

2                [To be submitted at trial].

**GENERAL INSTRUCTIONS**

1

Instruction No. 3̶23: Direct and Circumstantial Evidence

2

3        I turn now to some general instructions.  There are two types of evidence that you may

4    properly use in reaching your verdict.  One type of evidence is direct evidence.  One kind of

5    direct evidence is a witness's testimony about something the witness knows by virtue of her or

6    his own senses—something the witness has seen, felt, touched or heard.  Direct evidence may

7    also be in the form of exhibit.

8        The other type of evidence is circumstantial evidence.  Circumstantial evidence is

9    evidence that tends to prove one fact by proof of other facts.  There is a simple example of

10   circumstantial evidence that is often used in this courthouse.

11       Assume that when you came into the courthouse this morning the sun was shining and it

12   was a nice day.  Assume that there are blinds on the courtroom windows that are drawn and that

13   you cannot look outside.  As you are sitting here, someone walks in with an umbrella that is

14   dripping wet.  Someone else then walks in with a raincoat that is also dripping wet.

15       Now, you cannot look outside the courtroom and you cannot see whether or not it is

16   raining.  So you have no direct evidence of that fact.  But on the combination of the facts that I

17   have asked you to assume, it would be reasonable and logical for you to conclude that between

18   the time you arrived at the courthouse and the time these people walked in, it had started to rain.

19       That is all there is to circumstantial evidence.  You infer on the basis of reason and

20   experience and common sense from an established fact the existence or nonexistence of some

21   other fact.

52

1          Many facts, such as a person's state of mind, can only rarely be proved by direct

2    evidence.  Circumstantial evidence is of no less value than direct evidence.  It is a general rule

3    that the law makes no distinction between direct and circumstantial evidence, but simply requires

4    that before convicting Mr. Berry you, the jury, must be satisfied of Mr. Berry's guilt beyond a

5    reasonable doubt from all the evidence in the case.

53

1      <u>Instruction No. 334: Inferences</u>

2            During the trial, and as I give you these instructions, you have heard and will hear the

3      term "inference."  For instance, in their closing arguments, the attorneys have asked you to infer,

4      based on your reason, experience, and common sense, from one or more established facts, the

5      existence of some other fact.  I have instructed you on circumstantial evidence and that it

6      involves inferring a fact based on other facts, your reason, and common sense.

7            What is an "inference"?  What does it mean to "infer" something?  An inference is not a

8      suspicion or a guess.  It is a reasoned, logical decision to conclude that a disputed fact exists

9      based on another fact that you are satisfied exists.

10           There are times when different inferences may be drawn from facts, whether proven by

11     direct or circumstantial evidence.  The Government asks you to draw one set of inferences, while

12     Mr. Berry asks you to draw another.  It is for you, and you alone, to decide what inferences you

13     will draw.

14           The process of drawing inferences from facts in evidence is not a matter of guesswork or

15     speculation.  An inference is a deduction or conclusion that you, the jury, are permitted but not

16     required to draw from the facts that have been established by either direct or circumstantial

17     evidence.  In drawing inferences, you should exercise your common sense.

18           Therefore, while you are considering the evidence presented to you, you may draw, from

19     the facts that you find to be proven, such reasonable inferences as would be justified in light of

20     your experience.

54

1        Here again, let me remind you that, whether based on direct or circumstantial evidence,

2    or on the logical, reasonable inferences drawn from such evidence, you must be satisfied of the

3    guilt of the Defendant beyond a reasonable doubt before you may convict. Some inferences,

4    however, are impermissible.  You may not infer that Mr. Berry is guilty of participating in

5    criminal conduct if you find merely that he was present at the time the crime was being

6    committed and had knowledge that it was being committed.  Nor may you use evidence that I

7    have instructed you was admitted for a limited purpose for any inference beyond that limited

8    purpose.

9        In addition, you may not infer that Mr. Berry is guilty of participating in criminal conduct

10   merely from the fact that he associated with other people who were guilty of wrongdoing or

11   merely because he has or had knowledge of the wrongdoing of others.

55

1    <u>Instruction No. 3</u><s>45</s><u>: Number of Witnesses and Uncontradicted Testimony (If Applicable)</u>

2    The fact that one party called more witnesses and introduced more evidence than the

3    other does not mean that you should necessarily find the facts in favor of the side offering the

4    most witnesses.  By the same token, you do not have to accept the testimony of any witness who

5    has not been contradicted or impeached, if you find the witness not to be credible.  You also have

6    to decide which witnesses to believe and which facts are true.  To do this you must look at all the

7    evidence, drawing upon your own common sense and personal experience.  (After examining all

8    the evidence, you may decide that the party calling the most witnesses has not persuaded you

9    because you do not believe its witnesses, or because you do believe the fewer witnesses called by

10   the other side.)

11   In a moment, I will discuss the criteria for evaluating credibility; for the moment,

12   however, you should keep in mind that the burden of proof is always on the Government and the

13   Defendant is not required to call any witnesses or offer any evidence, since he is presumed to be

14   innocent.

56

1       <u>Instruction No. 356: Credibility of Witnesses</u>

2       You have had the opportunity to observe the witnesses.  It is your job to decide how

3   believable each witness was in his or her testimony.  You are the sole judges of the credibility of

4   the witnesses.  How do you evaluate the credibility or believability of the witnesses?  The answer

5   is that you use your common sense, judgment, and experience.  Common sense is your greatest

6   asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and

7   candid?  Or did the witness appear evasive, as though the witness was trying to hide

8   something?  How responsive was the witness to the questions asked on direct examination and

9   on cross-examination?   Consider the witness's demeanor, manner of testifying, and accuracy of

10  the witness's recollection.  In addition, consider how well the witness recounted what was heard

11  or observed, as the witness may be honest but mistaken.

12      If you find that a witness is intentionally telling a falsehood, that is always a matter of

13  importance that you should weigh carefully.  If you find that any witness has lied under oath at

14  this trial, you should view the testimony of such a witness cautiously and weigh it with great

15  care.  You may reject the entirety of the witness's testimony, part of it or none of it.  It is for you

16  to decide how much of a witness's testimony, if any, you wish to credit.  A witness may be

17  inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and

18  truthful in other respects.  It is for you to determine whether such untruths or inconsistencies are

19  significant or inconsequential, and whether to accept or reject all or to accept some and reject the

20  balance of the testimony of any witness.

1          In evaluating credibility of the witnesses, you should take into account any evidence that

2    the witness who testified may benefit in some way from the outcome of this case.  Therefore, if

3    you find that any witness whose testimony you are considering may have an interest in the

4    outcome of this trial, then you should bear that factor in mind when evaluating the credibility of

5    his or her testimony and accept it with great care.  This is not to suggest that any witness who has

6    an interest in the outcome of a case would testify falsely.  It is for you to decide to what extent, if

7    at all, the witness's interest has affected or colored his or her testimony.

8          You are not required to accept testimony even though the testimony is not contradicted

9    and the witness's testimony is not challenged.  You may decide because of the witness's bearing

10   or demeanor, or because of the inherent improbability of the testimony, or for other reasons

11   sufficient to yourselves that the testimony is not worthy of belief.  On the other hand, you may

12   find, because of a witness's bearing and demeanor and based upon your consideration of all the

13   other evidence in the case, that the witness is truthful.

14         Thus, there is no magic formula by which you can evaluate testimony.  You bring to this

15   courtroom all your experience and common sense.  You determine for yourselves in many

16   circumstances the reliability of statements that are made by others to you and upon which you

17   are asked to rely and act.  You may use the same tests here that you use in your everyday

18   lives.  You may consider the interest of any witness in the outcome of this case and any bias or

19   prejudice of any such witness, and this is true regardless of who called or questioned the witness.

20         You should judge the Defendant's testimony in the same way that you judge the

21   testimony of any other witness.

58

Instruction No. 3~~67~~: Credibility of Witnesses: Impeachment by Prior Inconsistent Statement ~~(If Applicable)~~

You have heard evidence that a witness made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony.  Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence bearing on Mr. Berry's guilt.  Evidence of the prior inconsistent statement was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency; and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all of the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement in determining whether to believe all or part of the witness's testimony.

1    Instruction No. 38: Charts and Summaries – Not Admitted As Evidence (If Applicable)

2         There have been a number of summary charts and exhibits that were shown to you but

3    not admitted into evidence.  These charts and summary exhibits serve merely as a summary and

4    analysis of testimony and documents in the case.  The charts and exhibits are here to act as visual

5    aids for you.  They are not, however, evidence in themselves.  They are graphic demonstrations

6    of underlying evidence.  It is the underlying evidence and the weight which you attribute to it

7    that gives value and significance to these charts; the charts are no better than the underlying

8    evidence.

9         If you decide that the charts and summary exhibits correctly present the underlying

10   evidence contained in the testimony and exhibits on which they are based, you are entitled to

11   consider them in analyzing and understanding the evidence.  To the extent that the charts differ

12   from what you determine the underlying evidence to be, you may reject them.  But one way or

13   the other, realize that the summary exhibits are not in and of themselves direct evidence.  They

14   are merely intended to serve as aids in a party's presentation of the evidence.

60

1    Instruction No. 39: Charts and Summaries—Admitted as Evidence (If Applicable)

2         Now, some of the exhibits that were admitted into evidence were in the form of charts

3    and summaries.  For these charts and summaries that were admitted into evidence, you should

4    consider them as you would any other evidence, which includes assessing the accuracy of the

5    information contained in those charts or summaries.

61

1          Instruction No. 3740: Law Enforcement Witnesses

2          You have heard testimony of some a witnesses who are is a law enforcement officers.  The

3    law is that the testimony of a witness who is employed by the Government is not, by virtue of the

4    witness's position, deserving of more or less consideration or greater or lesser weight than that of

5    any other witness, and the testimony of such a witness should not be regarded as more or less

6    truthful or accurate than that of any other witness simply based on the witness's employment.

7          At the same time, it is legitimate for defense counsel to try to attack the credibility of a

8    law enforcement witness on the grounds that his or her testimony may be colored by a personal

9    or professional interest in the outcome of the case.

10          It is your decision, after reviewing all the evidence, whether to accept the testimony of

11    the law enforcement witnesses and to give that testimony whatever weight, if any, you find it

12    deserves.

62

1                            Instruction No. 38<span style="color:orange">44</span>: Expert Witnesses

2        You have heard testimony from what we call expert witnesses.  An expert witness is

3 someone who by education or experience has acquired learning or experience in a specialized area

4 of knowledge.  Such a witness is permitted to express his opinions on matters about which he has

5 specialized knowledge and training.  The parties present expert testimony to you on the theory that

6 someone who is experienced in the field can assist you in understanding the evidence or in reaching

7 an independent decision on the facts.

8        Your role in judging credibility applies to experts as well as other witnesses.  In weighing

9 an expert's testimony, you may consider the expert's qualifications, his opinions, and his reasons

10 for testifying, as well as all the other considerations that ordinarily apply, including all the other

11 evidence in the case.  You may give expert testimony whatever weight, if any, that you find that it

12 deserves in light of all the evidence in this case.  If you find the opinion of an expert is based on

13 sufficient data, education and experience, and the other evidence does not give you reason to doubt

14 his or her conclusions, you would be justified in placing reliance on his or her testimony.  However,

15 you should not accept witness testimony simply because the witness is an expert.  If you decide

16 that the opinion of an expert was not based on sufficient education or experience or on sufficient

17 data, or is questionable for any reason, or is outweighed, in your judgment, by other evidence in

18 the case, then you might give the opinion of the expert less or no weight.  The determination of

19 the facts in this case rests solely with you.

1           <u>Instruction No. 3942: Accomplice/Cooperating Witness Testimony</u>

2           You have heard from witnesses who testified that they committed crimes including charges

3    arising out of the same facts as this case.  But first let me make it clear that you are instructed that

4    you are to draw no conclusions or inferences of any kind about the guilt of the Defendant on trial

5    from the fact that one or more prosecution witnesses pleaded guilty to similar charges.  The

6    decision of those witnesses to plead guilty was a personal decision those witnesses made about

7    their own guilt.  It may not be used by you in any way as evidence against or unfavorable to the

8    Defendant on trial here.

9           Let me next give you a few additional instructions on the subject of what we call

10   "cooperating witnesses."  The Government frequently argues, as it may do, that it must rely on the

11   testimony of witnesses who admit to participating in the alleged crimes at issue.  It asserts that it

12   must take its witnesses as it finds them and frequently must use such testimony in a criminal

13   prosecution, because otherwise it would be difficult or impossible to detect and prosecute

14   wrongdoers.  For these very reasons, the law allows the use of testimony from cooperating

15   witnesses.  Indeed, it is the law in federal courts that the testimony of a single cooperating witness

16   may be enough in itself for conviction, if the jury believes that the testimony establishes guilt

17   beyond a reasonable doubt.

18          Cooperating witness testimony should be given such weight as it deserves in light of the

19   facts and circumstances before you, taking into account the witness's demeanor, candor, the

20   strength and accuracy of the witness's recollection, the witness's background, and the extent to

21   which the testimony is or is not corroborated by other evidence in the case.

64

1    ~~However, t~~The testimony of cooperating witnesses should be scrutinized with special care

2    and caution because such witnesses may believe that it is in their interest to give testimony

3    favorable to the Government. The fact that a witness is an accomplice or cooperator can be

4    considered by you as bearing upon his credibility. You may consider whether a cooperating

5    witness, like any other witness in this case, has an interest in the outcome of the case and, if so,

6    whether it has affected his or her testimony.  You should ask yourselves whether these so-called

7    cooperating witnesses would benefit more by lying, or by telling the truth.  Was their testimony

8    made up in any way because they believed or hoped that they would somehow receive favorable

9    treatment by testifying falsely?  Or did they believe that their interests would be best served by

10   testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was

11   the motivation one which would cause him to lie, or was it one which would cause him to tell the

12   truth?  Did this motivation color his testimony?  It does not follow, however, that simply because

13   a person has admitted to participating in one or more crimes, he is incapable of giving a truthful

14   version of what happened.

15       You also heard testimony about cooperation agreements ~~and non-prosecution agreements~~

16   between the Government and ~~cooperating~~ witnesses.  I caution you that it is no concern of yours

17   why the Government made an agreement with a witness.  The existence of such an agreement itself

18   and its effect on the witness may be considered by you in determining credibility.  Your sole

19   concern is whether a witness has given truthful and accurate testimony here in this courtroom

20   before you.

65

1          As with any witness, let me emphasize that the issue of credibility need not be decided in

2    an all-or-nothing fashion.  Even if you find that a witness testified falsely or inaccurately in one

3    part, you still may accept his or her testimony in other parts, or may disregard all of it.  That is a

4    determination entirely for you, the jury.

66

1        <u>Instruction No. 4</u>03<u>: Testimony of Felons</u> (If Applicable)

2        You have heard the testimony of witnesses who were previously convicted of crimes,

3  punishable by more than one year in jail (or involving dishonesty or false statement). This prior

4  conviction was put into evidence for you to consider in evaluating the witness' credibility. You

5  may consider the fact that the witness who testified is a convicted felon in deciding how much of

6  his testimony to accept and what weight, if any, it should be given.

67

1           ~~Instruction No. 44: Testimony of Perjurer (If Applicable)~~

2           ~~There has been evidence that a witness who testified at this trial lied under oath at another~~

3    ~~proceeding. I must warn you that the testimony of this witness should be viewed cautiously and~~

4    ~~weighed with great care. It is, however, for you to decide how much of his testimony, if any, you~~

5    ~~wish to believe.~~

1              <u>Instruction No. 4</u>1<s>5</s><u>: Stipulations</u>

2              Some evidence came in by stipulation, or agreement between the parties, that certain facts

3     are true or that if a witness were to be called, he would testify in a certain way.  You must accept

4     as true what the stipulation is: either that the stipulated fact is true, or that the person would have

5     given the stipulated testimony had that person testified.  It is for you to decide how to evaluate that

6     information and how it fits into the rest of the case.

1      <u>Instruction No. 426: Preparation of Witnesses</u> (If Applicable)

2    You have heard evidence that witnesses may have discussed the facts of the case with their

3 own lawyers or with Government lawyers before they appeared in court.  Although you may

4 consider that fact when you are evaluating a witness's credibility, there is nothing either unusual

5 or inherently improper about a witness meeting with the Government lawyers or his or her own

6 lawyers before testifying so that the witness can be aware of the subjects he or she will be

7 questioned about, focus on those subjects, and have the opportunity to review relevant exhibits

8 before being questioned about them.  Such consultation helps conserve your time and the Court's

9 time.  In fact, it would be unusual for a lawyer to call a witness without such consultations.  The

10 weight you give to the fact or the nature of the witness's preparation for his or her testimony and

11 what inferences you draw from such preparation are within your discretion.

70

1          <u>Instruction No. 437: Persons Not on Trial</u>

2          Some of the people who may have been mentioned or involved in this case or in the events

3    of the case are not on trial, and you should not speculate why other persons are not on trial.  You

4    should not draw any inference, favorable or unfavorable, toward the Government or the Defendant

5    from the fact that other people are not on trial with this particular Defendant.  Those matters are

6    not your concern and should have no bearing upon your verdict.

1          <u>Instruction No. 4</u><s>48</s>: Uncalled Witnesses  <s>— Equally Available</s>

2          There were several people who were named in the testimony during the course of the trial

3   who did not appear at the trial to testify.  <s>Each party has an equal opportunity or lack of opportunity</s>

4   <s>to call any witness.  Therefore,</s> <u>Y</u>y<s>Y</s>ou should not draw any inferences or reach any conclusions as

5   to what such a person would have said had they been called as a witness.  Their absence should

6   not affect your judgment in any way.

7          A criminal defendant, you should always remember, does not have a burden or a duty to

8   call any witness or produce any evidence.  It is the Government's burden to prove guilt beyond a

9   reasonable doubt.

72

1          <u>Instruction No. 459: Defendant's Testimony (if Defendant Testifies)</u>

2          Under our Constitution, the defendant in a criminal case never has any duty to testify or

3  come forward with any evidence.  This is because, as I have told you, the burden of proof beyond

4  a reasonable doubt remains on the Government, and the defendant is presumed innocent.  That

5  burden remains with the Government throughout the entire trial and never shifts to the defendant.

6  The defendant is never required to prove that he is innocent.

7          In this case, however, the Defendant chose to testify and was subject to cross-examination

8  like any other witness.  You should examine and evaluate the testimony of the Defendant just as

9  you would the testimony of any witness with an interest in the outcome of the case.

73

1      Instruction No. 4650: Defendant's Right Not to Testify (if Defendant Does Not Testify)

2      The Defendant did not testify in this case.  Under our Constitution, a defendant has no

3  obligation to testify or to present any evidence, because it is the Government's burden to prove the

4  defendant guilty beyond a reasonable doubt.   That burden remains with the Government

5  throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove

6  that he is innocent.

7      You may not attach any significance to the fact that the Defendant did not testify.  No

8  adverse inference against him may be drawn by you because he did not take the witness stand.

9  You may not consider this against the Defendant in any way.

74

1      Instruction No. 51: Particular Investigative Techniques Not Required (If Applicable)

2      You have heard reference, in the arguments of defense counsel in this case, to the fact that

3  certain investigative techniques were or were not used by law enforcement authorities. There is no

4  legal requirement that law enforcement agents investigate crimes in a particular way or that the

5  Government prove its case through any particular means. While you are to carefully consider the

6  evidence presented, you need not speculate as to why law enforcement used the techniques they

7  did, or why they did not use other techniques. The Government is not on trial, and law enforcement

8  techniques are not your concern.

9      Your concern is to determine whether or not, based on the evidence or lack of evidence,

10  the guilt of the Defendant has been proven beyond a reasonable doubt.

75

1                 <u>Instruction No. 4752: Redaction of Evidentiary Items</u> (If Applicable)

2        Some of the exhibits admitted into evidence include redactions of certain information.

3 "Redacted" means that part of the document or recording was taken out.  There is nothing unusual

4 or improper about such redactions.  You are to concern yourself only with the part of the item that

5 has been admitted into evidence.  You should not consider any possible reason why the other part

6 of it was not admitted into evidence.

76

1              <u>Instruction No. 4853: Punishment</u>

2              The applicable penalties that the Defendant faces if convicted is of no concern to you, the

3    members of the jury, and should not, in any sense, enter into or influence your deliberations.  The

4    duty of imposing sentence rests exclusively upon the Court.

5              Your function is to weigh the evidence in the case and to determine whether or not the

6    Government has proved that the Defendant is guilty beyond a reasonable doubt, solely upon the

7    basis of such evidence.

77

1    Instruction No. ~~49~~54: Right to Hear Testimony; Election of Foreperson; Communications with
2                              the Court; Juror Note-Taking

3         You are about to go into the jury room and begin your deliberations.  The documentary

4    evidence will be sent back with you.  If you want any of the testimony, that can be arranged.

5    But please remember that it is not always easy to locate what you might want, so be as specific

6    as you possibly can in requesting portions of the testimony that you might want.

7         Your first task as a jury will be to choose your foreperson.  The foreperson has no greater

8    voice or authority than any other juror, but is the person who will communicate with the Court

9    through written note when questions arise and to indicate when you have reached your verdict.

10        Your requests for testimony—in fact, any communications with the Court— should be

11   made to me in writing, signed by your foreperson, and given to one of the Marshals.  I will

12   respond to any questions or requests you have as promptly as possible, either in writing or by

13   having you return to the courtroom so I can speak with you in person.  In any communication,

14   please do not tell me or anyone else how the jury stands on the issue of the jury's verdict until

15   after a unanimous verdict is reached.

16        For those of you who took notes during the course of the trial, you should not show your

17   notes to or discuss your notes with any other juror during your deliberations.  Any notes you

18   have taken are to assist you and you alone.  The fact that a particular juror has taken notes

19   entitles that juror's views to no greater weight than those of any other juror.

1              Finally, your notes are not to substitute for your recollection of the evidence in this case.

2       As noted, if you have any doubt as to any testimony, you may request that the official trial

3       transcript that has been made of these proceedings be read or otherwise provided to you.

79

## CONCLUDING REMARKS

1

2    The most important part of this case, members of the jury, is the part that you as jurors are

3    now about to play as you deliberate on the issues of fact.  It is for you, and you alone, to weigh

4    the evidence in this case and determine whether the Government has proved beyond a reasonable

5    doubt each of the essential elements of the crime with which Mr. Berry is charged.  If the

6    Government has succeeded, your verdict should be guilty as to that charge; if it has failed, your

7    verdict should be not guilty as to that charge.

8    You must base your verdict solely on the evidence or lack of evidence and these

9    instructions as to the law, and you are obliged under your oath as jurors to follow the law as I

10   have instructed you, whether you agree or disagree with the particular law in question.

11   Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided

12   solely by the evidence presented during the trial and the law as I gave it to you, without regard to

13   the consequences of your decision.  You have been chosen to try the issues of fact and reach a

14   verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your

15   clear thinking, there is a risk that you will not arrive at a just verdict.

16   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

17   opportunity to express your own views.  Every juror should be heard.  No one juror should hold

18   center stage in the jury room and no one juror should control or monopolize the deliberations.  If,

19   after listening to your fellow jurors and if, after stating your own view, you become convinced

20   that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

21   On the other hand, do not surrender your honest convictions and beliefs solely because of the

1    opinions of your fellow jurors or because you are outnumbered.  Your final vote must reflect

2    your conscientious belief as to how the issues should be decided.

3          Thus, the verdict must represent the considered judgment of each juror.  In order to return

4    a verdict, it is necessary that each juror agree to it.  Your verdict must be unanimous.

5          If at any time you are divided, do not report how the vote stands, and if you have reached

6    a verdict, do not report what it is until you are asked in open court.

7          Finally, I say this not because I think it is necessary, but because it is the custom in this

8    courthouse to say this:  You should treat each other with courtesy and respect during your

9    deliberations.

10          In conclusion, ladies and gentlemen, I am sure that if you listen to the views of your

11    fellow jurors, and if you apply your own common sense, you will deliberate fairly.

12          Members of the jury, I ask your patience for a few minutes longer.  It is necessary for me

13    to spend a few moments with counsel and the reporter at the side bar.  I will ask you to remain

14    patiently in the jury box, without speaking to each other, and we will return in just a moment to

15    submit the case to you.  Thank you.